EULALIA KIRKPATRICK v. J. M. CRUTCHFIELD.

(Filed 22 October, 1919.)

### 1. Trespass—Excessive Force—Livestock—Evidence—Damages.

Where the defendant claims that the plaintiff has trespassed upon his lands in tying a cow thereon, and there is evidence that the defendant took the cow from the plaintiff with the use of excessive force, when the cow was not damaging him, it is competent for the plaintiff to show that she had obtained permission of the lessee of the land to tie her cow there, so as to show her good faith in so doing, and an instruction that the defendant was liable in damages if he had used excessive force is a proper one.

### 2. Same—Impounding—Resistance.

Revisal, sec. 1679, does not authorize the taking up and impounding of livestock unless running at large, and does not apply to cows securely tied to trees under the immediate control of the owner with the permission of the lessee of the land, and it is forcible trespass to take them away over the protest of the owner, to prevent which the owner may use all necessary force, unless the taking is by appropriate legal proceedings.

### 3. Trespass — Excessive Force — Personal Injury — Damages — Earning Capacity.

Where a personal and permanent injury results from a forcible trespass, incapacity to earn money may be considered as an element of damages.

### 4. Instructions—Burden of Proof—Evidence—Greater Weight—Appeal and Error.

Held, in this case, an instruction that the burden was on the plaintiff to satisfy the jury by the evidence that her injuries were caused by the wrongful acts of the defendant, is not reversible error to defendant's prejudice because of the failure of the judge to add "by the greater weight of the evidence."

### 5. Damages—Personal Injury—Trespass—Evidence—Expectancy of Life.

Where there is evidence that a permanent physical injury resulted from a forcible trespass, the expectancy of life of the injured party may be considered upon the question of damages.

### 6. Damages—Personal Injury—Permanent Damages.

Where a personal injury has been wrongfully inflicted, of a permanent character, the measure of damages is the reasonable present value of the diminution of the earning capacity.

### 7. Husband and Wife—Actions—Personal Injury—Statutes.

Since the passage of chapter 13, Laws 1913, a married woman may sue without joining her husband to recover damages she has sustained by reason of a personal injury wrongfully inflicted; in this case, a trespass with the use of excessive force. Revisal, 408 (1).

APPEAL by defendant from *Lyon, J.,* at May Term, 1919, of ALA-MANCE.

This was an action by the plaintiff, 33 years old, the mother of two children, and living with her husband, who is not made a party plaintiff. The defendant was living near by and cultivating a crop on lands of the Southern Power Company, which he had leased for one year, and one William Boswell had also rented a portion of this land and was in possession of it. Said Boswell gave permission to the plaintiff to tie her cows there in a place where there was shrubbery and trees, but no crops planted. The defendant came to where the cows were tied, armed with a long whip, and in a rude, angry, and insulting manner, as plaintiff contends, and demanded to know why the cows were tied there. The evidence of the plaintiff was that the defendant knew her husband was not at home; that the defendant became enraged and swore that Boswell had no authority to give her permission, and proceeded to untie a cow when the plaintiff forbade him to do so. But he persisted, and while the plaintiff had hold of one end of the chain the defendant violently snatched it, jerking her down and dragged her upon the ground, inflicting many wounds and bruises upon her; that he then proceeded to untie the other cow, and again, in a violent, angry, and malicious manner jerked the chain from the plaintiff's hands, dragging her 75 feet or more, and in the course of this assault he jerked her through a barbed-wire fence into the public road, tearing her clothes almost off her and terribly wounding her limbs and body. This evidence was corroborated by one Frank Baldwin, and the testimony of the four physicians was that the plaintiff was at that time in a delicate condition and on account of the injuries inflicted upon her she had a miscarriage and was permanently injured and made a nervous wreck for life. The defendant gave a different version.

The jury found, upon the issues submitted, that the defendant wrongfully assaulted and wounded the plaintiff, as alleged in the complaint, and assessed her actual damages at $4,000, and defendant appealed.

Judgment thereon for plaintiff.

*W. H. Carroll for plaintiff.*
*E. W. S. Dameron and John A. Barringer for defendant.*

CLARK, C. J. The first four exceptions in the defendant's brief are directed principally to the right of the plaintiff to recover. He contends that the cows were in his lawful possession, being tied on land which he had rented, and that the plaintiff had no right to undertake to prevent his carrying them off, but that she should have resorted to the law to reclaim them. The court charged the jury that the defendant had no right to go there and forcibly take personal property that had been placed there by the defendant, and which were tied and not damage

feasant. The jury found the controverted facts with the plaintiff. And, indeed, the court might have instructed the jury that if they believed the testimony of the plaintiff, the defendant, in any event, had used excessive force.

The court properly permitted the plaintiff to testify, as was alleged in the complaint, that she had tied her cows there on permission from William Boswell, who claimed to be in lawful possession, in which she was corroborated by Boswell. Being charged with trespass, she had the right to explain her claim of right and to show her good faith. *Everett v. Smith,* 44 N. C., 303; *S. v. Faggart,* 170 N. C., 741.

The court, also, properly charged the jury that the defendant had no right to impound the cows. Revisal, 1679, authorizes only the taking up of livestock *running at large.* *S. v. Hunter,* 118 N. C., 1196. The cows, being securely tied to trees, were in the actual possession and under the immediate personal control of the plaintiff and her mother-in-law, and it was a forcible trespass to take them away against their will, they being present and forbidding.

The court, also, properly charged the jury that if the land was in the possession of Boswell, and he had given permission to plaintiff to tie the cows there, the defendant had no right to go there and attempt to remove them forcibly. *S. v. Davenport,* 156 N. C., 602, which holds that the rightful possession "cannot be vindicated by a bludgeon," but must be determined by a resort to legal proceedings.

The court further charged that if the defendant had the right to go there and remove the cattle, he had no right to do so in a forcible manner or commit an assault on plaintiff in doing so. *May v. Telegraph Co.,* 157 N. C., 416. If the defendant was in the rightful possession of the land, but the cows were tied securely to trees and doing no damage, and the owner was present and forbidding him to take the property, the defendant's remedy was by legal action.

The court properly charged the jury: "If you find for a fact that the plaintiff had gotten hold of the chain of the cow; that the defendant jerked her down and dragged her and caused the injury and bruises she has suffered, then he would be liable, and it would be the duty of the jury to answer the first issue 'Yes.'" This was correct. Revisal, 3620, amended by Laws 1911, ch. 193; *S. v. Smith,* 157 N. C., 578. On the other hand, the plaintiff had the legal right to prevent the defendant from taking her property from her forcibly and against her will, if she could, and to use all necessary force for that purpose.

The evidence tended to show that the force used by the defendant was excessive. *S. v. Taylor,* 82 N. C., 554; *S. v. Leggett,* 104 N. C., 784; *S. v. Hemphill,* 162 N. C., 632. The cattle were doing no damage. They were confined and in the actual and peaceable possession of plain-

tiff and her mother-in-law, and the defendant's action was, as found by the jury, a forcible trespass.

The defendant's assignments of error 7, 8, 9, 10, and 11 are to the charge of the court on the question of damages, but in them we find no error. Exception 7 was that the court allowed as an element of damage a consideration of the plaintiff's capacity to earn money. This Court has repeatedly held that "damages for personal injury include actual expenses for nursing, medical services; also loss of time and of *earning capacity* and mental and physical suffering." *Wallace v. R. R.,* 104 N. C., 442; *Rush v. R. R.,* 149 N. C., 158; *Ridge v. R. R.,* 167 N. C., 510.

The eighth assignment of error is because the judge charged the jury that the burden was upon the plaintiff to satisfy the jury, by the evidence, that her injuries were caused by the wrongful acts of the defendant. It was not reversible error not to add "by the greater weight of evidence." The ninth assignment was to the instruction that the jury "had the right to consider her reduced capacity to make a living." This, taken in connection with the whole charge, was correct. The tenth assignment of error was to the instruction that the jury had "the right to consider her expectancy of life." Where injuries are permanent, as testified to in this case, the charge is unexceptionable. *Ruffin v. R. R.,* 142 N. C., 120; *Clark v. Traction Co.,* 138 N. C., 77.

The eleventh assignment of error is because the judge instructed the jury: "She is entitled to recover the present net value of the difference between what she would have earned and what she has been able to earn in her present condition." In *Johnson v. R. R.,* 163 N. C., 431, the Court held that in an action for personal injuries resulting in diminished earning capacity the measure of damages is not the difference between the probable earnings of the plaintiff before and after the injury, but the reasonable present value of the diminution of his earning capacity, citing *Fry v. R. R.,* 159 N. C., 360.

The twelfth assignment of error is because the court charged the jury that, "The evidence of good character of the plaintiff and defendant and the other witnesses is not substantive evidence, but is corroborative evidence for the purpose of better enabling the jury to pass upon the truthfulness of the witness whose character is proven to be good." This is elementary law in civil actions.

The error most strenuously urged in the defendant's brief is that the plaintiff was not entitled to recover for her injury, but that it was for her husband to bring such action, and defendant's counsel contends that "it is the law in North Carolina that the husband is entitled to the society and to the services of his wife, and, consequently, to the fruits of her industry. She cannot contract or render those services to another without his consent. Those rights were given to the husband because of

the obligation imposed by law upon him to provide for her support, and that of her offspring, and the right continues unimpaired so long as the duty continues," citing *Syme v. Riddle,* 88 N. C., 463; *Baker v. Jordan,* 73 N. C., 145; *Hairston v. Glenn,* 120 N. C., 341; *Cunningham v. Cunningham,* 121 N. C., 413; *S. v. Roberson,* 143 N. C., 620. The counsel for the defendant were inadvertent to chapter 13, Laws 1913, which provides as follows: "The earnings of a married woman, by virtue of any contract for her personal services, and any damages for personal injuries, or other tort sustained by her can be recovered by her suing alone, and such earnings or recovery shall be her sole and separate property as fully as if she had remained unmarried." And Revisal, 408 (1), provides: "When the action concerns her separate property, she (a married woman) may sue alone."

The contention made for the defendant in this case was earnestly presented to the Court in *Price v. Electric Co.,* 160 N. C., 450, better known as "The Washerwoman's case." In that case a washerwoman at Charlotte, carrying her weekly washing home in a cart, was run over and badly injured by the negligence of the conductor in charge of a trolley car. "Her right foot was amputated, her right arm was broken, and permanently rendered stiff, and her head severely gashed." She was confined for several weeks in a hospital, suffering great agony and at considerable expense. "For these injuries and her physical and mental suffering, and for her diminished power to earn wages by reason of injury, the jury assessed the compensation at $5,000. The able counsel for the railroad company strenuously argued that being a married woman, this compensation was the property of her husband and could be recovered only by him, and not by her." Two of the Court were of the opinion that the married woman was entitled to recover her own earnings under the Constitution, which provided that she was entitled to any property "acquired before marriage, or to which, after marriage, she may become in any manner entitled," as fully as if single, and that this was certainly true since the Martin Act of 1911, ch. 109, had given her "the right to contract as if single," and that "for her earnings in occupations elsewhere than in her household duties she had the same right to recover as the husband had to sue for his own earnings, and that, for a stronger reason, damages for injury to her person and for her physical and mental sufferings belonged to her." The counsel for the railroad company cited the cases now relied upon by defendant, and the majority of the Court, in deference to those authorities, felt constrained to hold that the woman could not recover, but as the husband had been made a coplaintiff (though merely as a formality), the Court would not set aside the verdict.

It was felt to be unjust and illogical that the husband should recover for labor which the wife had performed outside the household duties, and under a contract she had a legal right to make "as if single," and that when the wife had borne the physical and mental suffering of the amputation of her foot, and a broken arm and other injuries, compensation therefor should go to her and not to her husband, who had suffered nothing.   The discharge of household duties, unending and tiresome and without limitation of hours, the rearing of children, the loving companionship and attentions of a wife are full compensation for her right to support by the husband.   Accordingly, at the ensuing term of the Legislature, one of the first statutes passed was chapter 13, Laws 1913, above set out, which has settled the law in this State, in no uncertain terms.

Upon review of all the exceptions and construing the charge of the court as a whole, we find

No error.

ALLEN, J., concurring in result.