G. Sandra FISHER, Appellee,

v.

**Graham ELMORE, Executor of the Estate of Alma Belch Bryant, Defendant,**

and

**Trustee of the State Baptist Convention of North Carolina, Appellant.**

No. 85–1621.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1985.

Decided Oct. 9, 1986.

---

Rodney A. Guthrie (Nance, Collier, Herndon & Wheless, Fayetteville, N.C., on brief), for appellant.

James B. Craven, III, Durham, N.C., for appellee.

Before WIDENER and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

PER CURIAM:

The Trustees of the State Baptist Convention of North Carolina (Trustees) appeal from a summary judgment in favor of G. Sandra Fisher in this dispute over who is entitled to the proceeds resulting from the sale and cutting of certain standing timber. Because the timber at issue had not yet been sold and therefore was still part of the realty at the time of the decedent's death, the proceeds from its subsequent sale belong to the owner of that real property. We affirm.

The material facts in this diversity case are undisputed. Five days prior to her death, Mrs. Alma Belch Bryant signed a paper headed Timber Purchase and Sales Agreement. This agreement gave Flowers Timber and Land, Inc. (Flowers) the right to enter and cut timber on certain land owned by Mrs. Bryant. Flowers was given six months within which to enter and harvest the timber it wanted. In return for this right, Flowers gave one dollar consideration and agreed to pay specified unit purchase prices in the event it cut and removed timber during the six month period. Flowers was not obligated to cut any timber under the agreement. It took no risk at all and assumed no financial or other obligation, the entire risk being upon Mrs. Bryant.

The day after Mrs. Bryant died, Flowers began cutting and removing the timber. Flowers paid for the timber it cut by payment to the executor of Mrs. Bryant's estate, who, of course, holds that money subject to the direction of the court. The cutting of the timber was completed less than two months after Mrs. Bryant's death.

Pursuant to Mrs. Bryant's will, the plaintiff G. Sandra Fisher and her sister were testamentary devisees of the real estate from which Flowers removed the timber in question. The sister subsequently conveyed her interest in the property to Sandra, who then brought this action against the executor, seeking a declaration that she (Sandra) was entitled to the proceeds from the sale of the timber removed from the property devised to her and her sister. The district court joined the Trustees as party defendants because they were the residuary legatees of Mrs. Bryant's estate and thus the beneficiaries of her unbequeathed personalty.

Treating the agreement as a "sale of goods" under North Carolina's version of the Uniform Commercial Code, the district court found that Sandra Fisher had title to the timber at the time the timber was cut, and granted her motion for summary judgment. *Fisher v. Elmore*, 610 F.Supp. 123, 125 (E.D.N.C.1985). The district court found that the agreement was a contract for the sale of goods pursuant to § 25-2-107(2) of the North Carolina Commercial Code. It further found that the trees which were cut were not identified to the contract under N.C. Code §§ 25-2-401 and 25-2-501 until they were cut and that title to the trees did not pass until they were cut. Since the plaintiff had the title to the trees at the time they were cut, the district court held the proceeds belonged to the plaintiff.

We agree with the result reached but for different reasons. See *S.E.C. v. Chenery*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). We do not think the North Carolina Commercial Code controls that part of the transaction at issue here. Applying the substantive law of North Carolina, which we are bound to do in a diversity case such as this, the agreement amounted to no more than a bare option contract.[1] Flowers' one dollar consideration bought it merely the right to accept Mrs. Bryant's offer to sell her timber within the specified six month period. See *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 194 S.E.2d 521, 538 (1973), which distinguished between an option to buy and a contract of sale. Such an agreement is merely an option to purchase the timber and not itself a contract of sale. *Id.*

 Flowers eventually exercised its option to purchase and entered into a contract of sale by accepting Mrs. Bryant's offer by entering the land and harvesting the timber.[2] See *Rose*, 194 S.E.2d at 538. However, Flowers' acceptance occurred after Mrs. Bryant's death and therefore, at the time of Mrs. Bryant's death, the standing timber was not yet purchased and remained part of the real property. See, e.g., *Drake v. Howell*, 133 N.C. 162, 45 S.E. 539, 540 (1903). Accordingly, we need not decide whether the acceptance by Flowers' cutting the timber was a sale of goods or a sale of realty[3] since the timber passed to the Fishers as a part of the realty upon Mrs. Bryant's death and the proceeds from its sale belong to Sandra Fisher.

Our reasoning is consistent with the North Carolina Supreme Court's distinction between an option to buy and a contract of sale in *Rose*. In that case, the buyer entered into two agreements with the seller which the court considered to be one entire contract. In the first agreement, the buyer leased its rock quarry to the seller for ten years. That agreement also provided that the seller promised "to sell stone to buyer" at stated prices. In the second agreement, the seller agreed to furnish to the buyer stone at the same certain set prices for the ten year period. Under the terms of the second agreement, the buyer was to order the stone monthly and pay for it on the tenth day of each month. Emphasizing the second agreement, the North Carolina Supreme Court held that an option contract was formed, and not a contract of sale. *Rose*, 194 S.E.2d at 538. The court distinguished this type of option to buy from a contract of sale. *Id.; see also Kidd v. Early*, 289 N.C. 343, 222 S.E.2d 393, 399 (1976) (option to purchase not a contract to sell until exercised in accordance with its terms); *Lawing v. James*, 285 N.C. 418, 206 S.E.2d 162, 165 (1974) (same).

Our holding is consistent with the North Carolina court's most recent decision in this area. In *Mills v. New River Wood Corp.*, 77 N.C.App. 576, 335 S.E.2d 759 (1985), the North Carolina Court of Appeals held that a timber sales agreement was controlled, for statute of limitations purposes, by the State's commercial code. However, *Mills* is distinguishable from the instant case because *Mills* did not involve a contract such as that before us. Rather, a review of the

---

1. The Timber Purchase and Sales Agreement purported to sell the timber to Flowers. Flowers had no obligation whatsoever under the agreement, however, unless and until the timber was cut. The greatest interest that Flowers could claim in the timber under such an agreement was that it had an option to purchase the timber.

2. The North Carolina Commercial Code allows acceptance "in any manner and by any medium reasonable in the circumstances." N.C.Gen. Stat. § 25–2–206(1)(a). While we need not decide whether the Commercial Code applies to the sales contract created by the cutting of the

timber, we note that acceptance by performance is proper in such a situation. See *Koppers Co. v. Kaiser Aluminum & Chemical Corp.*, 9 N.C.App. 118, 124, 175 S.E.2d 761, 767 (1970).

3. In either event, at the time of Mrs. Bryant's death, the timber was realty since a contract for the sale of timber was not yet in existence. Even if such a contract formed by acceptance by the cutting was a contract for the sale of goods under the provisions of the North Carolina Commercial Code, it was formed too late in time to benefit the Trustees as residuary legatees. The timber had already passed to the specific devisees as realty.

record on appeal in *Mills* demonstrates that the state court of appeals was dealing with an outright deed of timber for a present consideration, with the provision that any timber not cut within a specified period of two years "shall be the property of the [grantors]." *Mills* record on appeal at 5–7. That is simply not our case.

The judgment of the district court is accordingly

AFFIRMED.