WENDELL A. FORDHAM v. A.V. EASON AND WIFE, GRACE W. EASON; AND
AMERICAN WOODLAND INDUSTRIES, INC.

No. 509PA98

(Filed 3 December 1999)

**1. Trespass; Uniform Commercial Code— contract for sale of timber—competing claims—trespass to chattel**

Timber is classified as goods under the U.C.C., N.C.G.S. § 25-2-107(2), when it is the subject of a contract for sale. Therefore, a dispute over a trespass to timber where the claim to a possessory interest arises under a contract for the sale of timber should be settled using a trespass to chattel analysis.

**2. Trespass— contract for timber sale—validity—possessory interest—trespass to chattel**

Defendant AWI owned a sufficient possessory interest in timber under a "Timber Purchase and Sales Agreement" with the landowners to bring an action against plaintiff for trespass to chattel based upon plaintiff's removal of some of the timber, and plaintiff had no possessory interest in the timber pursuant to a "Timber Cutting Contract" with the landowners, where defendant AWI had a valid contract under the U.C.C. for the sale of timber in that its agreement with the landowners constituted a writing sufficient to meet the statute of frauds under N.C.G.S. § 25-2-201, a $30,000 deposit AWI paid the landowners was consideration to guarantee AWI's rights in the timber, and AWI's actions in accordance with the terms of the agreement created a contract for the sale of timber; plaintiff's "Timber Cutting Contract" constituted only an attempt to create an option to purchase timber which failed because plaintiff did not give the landowners any consideration for the option to purchase; and plaintiff thus had no rights in the timber so that his entry onto the landowners' property and his removal of timber was unauthorized and unlawful.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 131 N.C. App. 226, 505 S.E.2d 895 (1998), affirming in part and reversing in part an order for summary judgment entered by Jenkins, J., on 9 October 1997 in Superior Court, Johnston County. Heard in the Supreme Court 13 September 1999.

**FORDHAM v. EASON**

[351 N.C. 151 (1999)]

*Narron, O'Hale and Whittington, P.A., by Jacquelyn L. Lee, O. Hampton Whittington Jr., James W. Narron, and John P. O'Hale, for plaintiff-appellee.*

*Thomas Edward Hodges for defendant-appellant American Woodland Industries, Inc.*

ORR, Justice.

This case arises out of a dispute between defendant-appellant American Woodland Industries, Inc. (AWI) and plaintiff-appellee Wendell A. Fordham over a parcel of timber owned by defendants A.V. Eason and his wife, Grace W. Eason (Easons). On 11 November 1996, the Easons signed an agreement with Fordham titled "Timber Cutting Contract." This contract gave Fordham rights to "all timber and pulpwood located on all lands owned by Mr. A.V. Eason and being located in Johnston County, N.C.," until 1 June 1997. On 7 February 1997, the Easons entered into a separate agreement with AWI titled "Timber Purchase and Sales Agreement." This agreement covered the same parcel of land as Fordham's "Timber Cutting Contract" with the Easons and allowed AWI to cut and remove timber from the Easons' property for two years. AWI recorded the "Timber Purchase and Sales Agreement" with the Johnston County Register of Deeds on 10 February 1997.

AWI began to cut timber on the Easons' property within forty-eight hours of recording the "Timber Purchase and Sales Agreement." On 12 February 1997, Fordham obtained a temporary restraining order enjoining AWI from continuing its logging operation on the Easons' property. In a complaint, filed on 14 February 1997, Fordham alleged breach of contract against the Easons and interference with contractual relations and "unfair and deceptive trade practices" against AWI, and requested a preliminary injunction "prohibiting the cutting of timber on the property of the Defendant Eason by the Defendant AWI." On 17 February 1997, the trial court granted a preliminary injunction barring AWI from "harvesting or logging any of the timber located on those lands owned by Defendants Eason." Several days after the trial court entered the preliminary injunction, Fordham entered the Easons' property and cut and removed timber.

AWI filed an answer to Fordham's complaint on 21 March 1997 denying all pertinent allegations and alleging several counterclaims, including trespass, wrongful cutting of timber, interference with contractual relations, "unfair and deceptive trade practices," and abuse

of process. Fordham responded to AWI's counterclaims on 29 April 1997, also denying all pertinent allegations. Fordham filed for summary judgment of AWI's counterclaims on 15 September 1997, and AWI filed for summary judgment of Fordham's claims on 26 September 1997. The motions were heard at the 6 October 1997 Civil Session of Superior Court, Johnston County. The trial court entered an order on 9 October 1997 granting Fordham's motion for summary judgment of all of AWI's counterclaims and further granting AWI's motion for summary judgment of all of Fordham's claims. AWI appealed to the Court of Appeals from the order allowing Fordham's motion for summary judgment as to AWI's counterclaims.

In a unanimous decision, the Court of Appeals affirmed summary judgment on AWI's counterclaims against Fordham for interference with contractual rights, for "unfair and deceptive trade practices," for wrongful cutting of timber, and for trespass, but reversed summary judgment on AWI's abuse of process claim. As to the trespass claim, the Court of Appeals stated:

> Furthermore, a claim of trespass requires: (1) possession of the property by plaintiff when the alleged trespass was committed; (2) an unauthorized entry by defendant; and (3) damage to plaintiff. Since Woodland cannot show that it was the owner of the land, it cannot maintain a cause of action for trespass.

*Fordham v. Eason*, 131 N.C. App. 226, 229, 505 S.E.2d 895, 898 (1998) (citation omitted).

On 3 March 1999, we allowed AWI's petition for discretionary review of the trespass action but denied Fordham's conditional petition for discretionary review.

The basic issue before this Court for review is whether AWI, under its agreement with the Easons, has sufficient ownership rights to bring an action for trespass. The Court of Appeals ruled that AWI did not. For the reasons set forth below, we disagree.

The Court must first evaluate the elements of a trespass cause of action and determine if there are any genuine issues of fact as to any element and if Fordham, as the moving party, was entitled to judgment as a matter of law. Before the Court can analyze AWI's counterclaim for trespass, we must determine whether it is appropriate to evaluate this particular cause of action and claim for timber rights as a trespass to realty or a trespass to chattel. Essential to this decision is the determination of whether timber should be classified as realty

or as goods. Fordham contends that timber should be classified as realty, and AWI contends that timber is classified as goods under the Uniform Commercial Code as adopted in chapter 25 of the North Carolina General Statutes (Uniform Commercial Code). As will be discussed in detail below, in this case, the timber involved in AWI's "Timber Purchase and Sales Agreement" was goods. Because timber is classified as goods, the Court must evaluate Fordham's motion for summary judgment on AWI's counterclaim for trespass using the elements of a trespass to chattel cause of action.

Historically, timber interests have been treated as an interest in land. *See Drake v. Howell*, 133 N.C. 162, 165, 45 S.E. 539, 540 (1903); *Mizell v. Burnett*, 49 N.C. 249, 252 (1857). Traditional case law classified timber as realty. *See Williams v. Parsons*, 167 N.C. 529, 531, 83 S.E. 914, 915 (1914); *Hawkins v. Goldsboro Lumber Co.*, 139 N.C. 160, 162, 51 S.E. 852, 853 (1905). As realty, timber transactions had to comply with the formalities required by a transfer of an interest in land. *See Dulin v. Williams*, 239 N.C. 33, 38, 79 S.E.2d 213, 217 (1953); *Winston v. Williams & McKeithan Lumber Co.*, 227 N.C. 339, 341, 42 S.E.2d 218, 220 (1947); *Morton v. Pine Lumber Co.*, 178 N.C. 163, 167, 100 S.E. 322, 323 (1919). Several cases also distinguished the classification and treatment of standing timber from severed timber. Those decisions held that while standing timber was realty, severed timber was personal property. *See Austin v. Brown*, 191 N.C. 624, 627, 132 S.E. 661, 662 (1926); *Frank Hitch Lumber Co. v. Brown*, 160 N.C. 281, 283, 75 S.E. 714, 714-15 (1912).

When North Carolina adopted the Uniform Commercial Code in 1965, it changed the classification of timber when timber is the subject of a contract for sale. N.C.G.S. §§ 25-2-101, 25-2-107 (1995). The Uniform Commercial Code defines timber as follows:

A contract for the sale . . . of timber to be cut is a contract for the sale of goods within this article whether the subject matter is to be severed by the buyer or by the seller even though it forms part of the realty at the time of contracting, and the parties by identification effect a present sale before severance.

N.C.G.S. § 25-2-107(2).

The body of law discussing timber rights under N.C.G.S. § 25-2-107 is limited. In *Mills v. New River Wood Corp.*, 77 N.C. App. 576, 335 S.E.2d 759 (1985), the Court of Appeals held that contracts for the sale of "timber to be cut" had a four-year statute of limitations

because they were governed by N.C.G.S. § 25-2-107(2). *Mills*, 77 N.C. App. at 577, 335 S.E.2d at 760.

**[1]** We conclude that timber is classified as goods under North Carolina law when it is the subject of a contract for sale. A dispute over a trespass to timber where the claim of a possessory interest arises under a contract for the sale of timber should be settled using a trespass to chattel analysis. *See generally* PROSSER AND KEETON ON THE LAW OF TORTS § 14, at 85 (5th ed. 1984) (discussing that trespass to chattel involves personal property or chattel).

The basis of a trespass to chattel cause of action lies in "injury to possession." *Motley v. Thompson*, 259 N.C. 612, 618, 131 S.E.2d 447, 452 (1963). A successful action for trespass to chattel requires the party bringing the action to demonstrate that she had either actual or constructive possession of the personalty or goods in question at the time of the trespass, *see White v. Morris*, 8 N.C. 301, 303 (1821); *Carson v. Noblet*, 4 N.C. 136 (1814), and that there was an unauthorized, unlawful interference or dispossession of the property, *see Binder v. General Motors Acceptance Corp.*, 222 N.C. 512, 515, 23 S.E.2d 894, 896 (1943); *Kirkpatrick v. Crutchfield*, 178 N.C. 348, 350, 100 S.E. 602, 604 (1919); *Reader v. Moody*, 48 N.C. 372, 373-74 (1856).

In order to satisfy the first element of a trespass to chattel cause of action, in this case, AWI must have been in either actual or constructive possession of the property at the time Fordham's alleged trespass was committed. *See White*, 8 N.C. at 303; *Carson*, 4 N.C. at 136. Actual possession consists of exercising dominion over, making ordinary use of, or taking the profits from the land in dispute. *See Matthews v. Forrest*, 235 N.C. 281, 284, 69 S.E.2d 553, 556 (1952). Constructive possession is a legal fiction existing when there is no actual possession, but there is title granting an immediate right to actual possession. *See id.* The key to assessing possession under a trespass to chattel claim is determining if there is a right to present possession whenever so desired, *see Carson*, 4 N.C. at 136, or a right to immediate actual possession, *see White*, 8 N.C. at 303.

**[2]** In this case, AWI is claiming title to the Easons' tract of timber through its "Timber Purchase and Sales Agreement." To determine if AWI actually had title to the Easons' timber through the "Timber Purchase and Sales Agreement," we must determine if the "Timber Purchase and Sales Agreement" gave AWI possession of the timber at the time Fordham entered the Easons' property and removed the timber.

First, we look at the agreement between AWI and the Easons. On 7 February 1997, Rubin Williams, acting on behalf of AWI, entered into the agreement with the Easons titled "Timber Purchase and Sales Agreement." This agreement allowed AWI to enter and remove trees, tops, or laps from a 115-acre tract of land bounded on the east by the Little River and the West by Cat Tail Swamp, as recorded at book 1434, page 584 in the Johnston County Register of Deeds' office, until 7 February 1999. This agreement priced the timber on a per-unit basis using the species of timber, class of material, and unit type sold. In return for the right to remove timber from the Easons' property, AWI paid Eason a $30,000 deposit. The "Timber Purchase and Sales Agreement" allowed AWI initially to deduct the cost of any timber removed from the land from the $30,000 deposit consistent with the per-unit prices listed in the agreement. AWI agreed to pay the Easons on a per-unit basis when the $30,000 deposit was completely depleted. Additionally, the agreement required the Easons to refund AWI's deposit "if there is any stoppage of logging operations for any reason, less the amount of the stumpage cut." The Easons received a check for $30,000 from AWI on 7 February 1997. A.V. Eason and Grace W. Eason signed the agreement on 10 February 1997 in the presence of Rubin Williams, a Notary Public, but the agreement was not signed by an AWI representative. However, the bottom of the agreement listed American Woodland Industries, Inc. and listed the corporation's address. Within forty-eight hours of recording the "Timber Purchase and Sales Agreement," AWI entered the Easons' property and began cutting timber.

To determine if AWI had possession of the Easons' timber at the time Fordham entered and removed timber, we must evaluate the "Timber Purchase and Sales Agreement" under the Uniform Commercial Code and decide if AWI's contract for the sale of timber was enforceable and what its rights, if any, were under that contract. *See* N.C.G.S. §§ 25-2-107, 25-2-102 (1995).

The Uniform Commercial Code applies more liberal rules governing the formation of contracts than the rules applied under traditional common law. *See* N.C.G.S. § 25-1-102. Section 25-2-204 of the Uniform Commercial Code provides for the general formation of contracts. *See* N.C.G.S. § 25-2-204 (1995). Section 25-2-204(1) reads as follows: "A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Generally, contracts formed under article 2 will also have to be supported by con-

sideration. *See* N.C.G.S. § 25-1-103 (1995); *Brenner v. Little Red Sch. House, Ltd.*, 302 N.C. 207, 215, 274 S.E.2d 206, 212 (1981).

AWI and the Easons' conduct clearly demonstrates that they intended to enter a contract for the sale of timber. *See* N.C.G.S. § 25-2-204. The "Timber Purchase and Sales Agreement" also constitutes a writing sufficient to meet the statute of frauds requirements in N.C.G.S. § 25-2-201. *See* N.C.G.S. § 25-2-201 (1995). The $30,000 deposit AWI paid the Easons was consideration to guarantee AWI's rights in the Easons' timber from 10 February 1997 until 7 February 1999. *See Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 722, 127 S.E.2d 539, 543 (1962) (noting that adequacy of consideration is generally irrelevant after consideration is found to exist). Finally, by acting in accordance with the terms in the "Timber Purchase and Sales Agreement," AWI created a contract for the sale of timber. *See Kidd v. Early*, 289 N.C. 343, 352, 222 S.E.2d 392, 399 (1976).

We conclude that under the Uniform Commercial Code, AWI had a valid contract for the sale of timber. At the time Fordham removed the timber from the Easons' property, under the "Timber Purchase and Sales Agreement," AWI also had the right to immediate possession of that timber. Thus, AWI meets the first requirement of a trespass to chattel cause of action.

Fordham challenges AWI's claim of possession of the Easons' timber on the grounds that AWI did not have a valid deed. However, under the Uniform Commercial Code, a deed is not required to create a contract for the sale or transfer of goods. *See* N.C.G.S. § 25-2-204. Thus, this argument is without merit.

The second element to a successful cause of action for trespass to chattel is that the defendant made an unauthorized interference or dispossession of the property. *See Binder*, 222 N.C. at 515, 23 S.E.2d at 896; *Kirkpatrick*, 178 N.C. at 350, 100 S.E. at 604; *Reader*, 48 N.C. at 373-74. It is undisputed that Fordham entered the Easons' property and removed timber; thus, we must only look at the agreement between Fordham and the Easons to determine if Fordham's entry onto the Easons' property and removal of the timber was unauthorized.

The agreement Fordham and the Easons entered into on 11 November 1996 allowed Fordham to cut and remove "all timber and pulpwood located on all lands owned by Mr. A.V. Eason and being

FORDHAM v. EASON

[351 N.C. 151 (1999)]

located in Johnson County, N.C.," until 1 June 1997. This "Timber Cutting Contract" placed no obligation on Fordham to cut any timber, and Fordham did not pay the Easons any consideration for the right to remove the timber. Fordham agreed to pay the Easons a per-unit price for any timber removed during the life of the "Timber Cutting Contract." The agreement was signed by A.V. Eason, Grace W. Eason, and Wendell Fordham in the presence of a notary public, but it was never registered in the Office of the Register of Deeds.

Through the "Timber Cutting Contract," Fordham and the Easons attempted to create an option to purchase timber. While contracts for the sale of timber are governed by the Uniform Commercial Code and are treated as goods, an option to purchase timber is not a contract for the sale of timber. *See Fisher v. Elmore*, 802 F.2d 771, 773 (4th Cir. 1986) (holding that an option to purchase timber did not become a contract for the sale of timber governed by the Uniform Commercial Code until the option was exercised by harvesting the timber). North Carolina case law also distinguishes between options to purchase and contracts for the sale of goods. *See Rose v. Vulcan Materials Co.*, 282 N.C. 643, 668, 194 S.E.2d 521, 538 (1973). Since the Uniform Commercial Code governs only contracts for the sale of timber, *see* N.C.G.S. § 25-2-107, an option to purchase timber is not governed by the Uniform Commercial Code. Instead, an option to purchase timber is governed by the common law. *See Fisher*, 802 F.2d at 773.

An option to purchase is an offer for which consideration has been given. *See Kidd*, 289 N.C. at 360, 222 S.E.2d at 404. Thus, an option is a contract itself. *Id.* Fordham did not give the Easons any consideration for the option to purchase timber under the "Timber Cutting Contract." While, under the Uniform Commercial Code, certain option contracts can remain open without consideration, *see* N.C.G.S. § 25-2-205 (1995), under the common law, an option to purchase requires consideration to be enforceable, *see Kidd*, 289 N.C. at 360, 222 S.E.2d at 404; *Brenner*, 302 N.C. at 215, 274 S.E.2d at 212. The option to purchase fails because Fordham did not give the Easons any consideration for the option to purchase in the "Timber Cutting Contract." *See Brenner*, 302 N.C. at 215, 274 S.E.2d at 212. At the time Fordham entered the Easons' property and removed the timber, he had no rights in the timber, and his entry on the property was both unauthorized and unlawful.

Only one party in this case, AWI, had any possessory rights in the Easons' timber. Thus, it is unnecessary to discuss the filing procedures and requirements necessary to establish superior title and to

protect a contract holder's rights against subsequent purchasers and lien creditors.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (1990).

No genuine issue of material fact exists in this cause of action for trespass to chattel. AWI owned a valid possessory interest in the subject timber on 10 February 1997 under its "Timber Purchase and Sales Agreement" with the Easons. Fordham has admitted intentional interference with that possessory interest by entering the property and removing the timber. As we have determined that Fordham had no valid possessory interest in the timber at the time he removed it, this intentional interference was unauthorized. Consequently, Fordham was not entitled to summary judgment on AWI's counterclaim for trespass.

Therefore, we reverse the Court of Appeals as to AWI's counterclaim for trespass and remand this case to that court for further remand to the Superior Court, Johnston County, for such other actions as are consistent with this opinion.

REVERSED AND REMANDED.