FRANK S. KIRSCHBAUM, Plaintiff v. McLAURIN PARKING COMPANY; McLAURIN MANAGEMENT ASSOCIATES, INC.; QUANTUM SUPPORT, INC., Defendants

No. COA07-385

(Filed 19 February 2008)

## 1. Trespass— against personal property—booting of car

The trial court did not err by granting summary judgment for defendants on a trespass against personal property claim arising from the booting of plaintiff's car in a private parking lot. Defendants were privileged to attach a boot to plaintiff's car to protect their right to exclusive possession of the lot.

KIRSCHBAUM v. McLAURIN PARKING CO.

[188 N.C. App. 782 (2008)]

**2. Damages and Remedies— booting of car—attempt at removal**

The trial court did not err by granting summary judgment for defendants on a claim for damages to personal property arising from the booting of plaintiff's car. Defendants were within their rights to boot the car, and plaintiff inflicted the damage on his car himself by resorting to a bludgeon rather than a legal remedy.

**3. Unfair Trade Practices— booting of car—summary judgment**

Summary judgment was correctly granted for defendants on an unfair and deceptive trade practices claim arising from the booting of plaintiff's car in a private parking lot.

**4. Malicious Prosecution— booting of car—taking off boot— malice not shown**

Summary judgment was correctly granted for defendants on a claim for malicious prosecution arising from plaintiff's car being booted in a private parking lot. Plaintiff did not show malice: defendants had no desire to press charges once the boot was recovered, the police department proceeded on its own in proceeding with a misdemeanor larceny charge, and there was probable cause to believe that defendant had committed larceny in taking the boot.

Appeal by plaintiff from an order entered 18 December 2006 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 29 October 2007.

*Frank S. Kirschbaum, plaintiff, pro se.*

*McDaniel & Anderson, L.L.P., by William E. Anderson, for defendant McLaurin Parking Company.*

*Cranfill, Sumner & Hartzog, LLP, by Dan M. Hartzog, for defendant Quantum Support, Inc.*

ELMORE, Judge.

Frank S. Kirschbaum (plaintiff) appeals from an order of summary judgment in favor of McLaurin Parking Company (McLaurin Parking) and Quantum Support, Inc. (Quantum) (together, defendants).

Around noon on 1 March 2006, a weekday, plaintiff parked his car in a private parking lot sub-leased by McLaurin Parking (Lot 11). McLaurin Parking leases the spaces in that lot to long-term tenants

**KIRSCHBAUM v. McLAURIN PARKING CO.**

[188 N.C. App. 782 (2008)]

during the work week, and to a nearby restaurant, Caffé Luna, during evenings and weekends. McLaurin Parking employs Quantum to monitor the lot, provide security, and ensure that the people who have paid for parking spaces in the lot have access to their space during the appropriate hours.

The entrance to Lot 11 is flanked on each side by a sign. At the time of the incident, the sign on the left side of the entrance stated the following:

> EVENING & WEEKEND
> PARKING FOR CAFFÉ LUNA
> PATRONS ONLY
>
> 6 pm until Midnight Weekdays
> 8 am until Midnight Weekends
>
> DAY TIME PARKING & ADDITIONAL EVENING
> PARKING IN WILMINGTON STREET DECK
> (CONTINUE ON HARGETT—TURN RIGHT ON
> WILMINGTON ENTER MIDDLE OF BLOCK)
>
> WARNING
>
> PARKING NOT PERMITTED AFTER MIDNIGHT
> ANY AUTOMOBILE IN LOT AFTER MIDNIGHT
> SUBJECT TO BEING TOWED AT OWNERS EXPENSE

The owner of Caffé Luna, Parker Kennedy, drafted the language on this sign. He stated in an affidavit that he had the sign

> placed in the parking lot so that it would be clear to patrons of my restaurant and members of the general public *whether* they were permitted to park in this lot. The language contained on this sign clearly indicates that Caffé Luna patrons may only park in this lot during evening hours before midnight and on the weekends. As a convenience to those who seek to park in the lot, but cannot, either because there are no available space[s] or *because they are not authorized to do so*, I included instructions on the sign indicating where public parking is available near my restaurant.

(Emphasis added).

The sign to the right of the entrance into Lot 11 stated the following:

**KIRSCHBAUM v. McLAURIN PARKING CO.**

[188 N.C. App. 782 (2008)]

PERMIT
PARKING

ILLEGALLY PARKED AND
UNAUTHORIZED VEHICLES WILL
BE TOWED AT VEHICLE
OWNER'S EXPENSE
24 HOURS A DAY-7 DAYS A WEEK

ACE TOWING
821-2121

McLaurin Parking does not tow vehicles from Lot 11 because there is not enough space in the lot for a tow truck when all of the spaces are filled, and because it is not McLaurin Parking's policy to tow vehicles. McLaurin Parking installed the sign at the request of the Raleigh Police Department as a crime deterrent.

Plaintiff did not have a permit to park in Lot 11 and had no verbal or written agreement that he could park in Lot 11. Although there were three public parking lots within approximately 100 yards of Lot 11, plaintiff chose to park in Lot 11 while he had lunch, on a weekday, at Caffé Luna. Plaintiff spent about two hours having lunch at Caffé Luna. During that time, the person who leased the parking space returned from his own lunch outing to discover that plaintiff had parked in his space. The authorized lessee notified McLaurin Parking that somebody had parked in his space. A Quantum security guard, Samuel Okoya, investigated the situation and determined that the Toyota Land Cruiser parked in the space was not an authorized vehicle. Okoya then placed an immobilization device commonly referred to as a "boot" on plaintiff's car. According to Okoya's affidavit,

> The boots used by Quantum Support, Inc. have been designed so that damage, scratching or marring of the vehicle's wheel, rim edge or hubcap does not occur. In addition to the precautions taken by the manufacturer to prevent damage to the vehicle, Quantum Support, Inc. also places a piece of carpet, one-half inch in thickness, in between the boot and the wheel each time a vehicle is immobilized. The carpet is removed when the boot is removed from the vehicle.

Okoya employed the extra-precautionary piece of carpet when he booted plaintiff's car.

When plaintiff returned to his car after lunch, he saw that his car had been booted and that an immobilization notice had been placed on his window. The notice instructed plaintiff to contact Quantum so that the boot could be removed upon the payment of a $50.00 fee. The notice also provided Quantum's telephone number. Plaintiff returned to Caffé Luna and asked Parker Kennedy to remove the boot. Kennedy advised plaintiff to follow the instructions on the notice.

Instead, plaintiff attempted to remove the boot himself. Eventually, plaintiff was able to remove the entire wheel from his car and replace it with a spare. He placed the wheel, with boot still attached, into his car and drove away. Plaintiff admitted during his deposition that he scratched his wheel during his attempt to remove the boot and that the boot did not cause damage to his vehicle until he attempted to remove it. The next day, plaintiff removed the boot from the wheel.

McLaurin Parking contacted the Raleigh Police Department to ask for help in recovering the boot. This was also done in case McLaurin Parking had to file an insurance claim. A police officer visited plaintiff and told plaintiff that he had to return the boot to McLaurin Parking. Plaintiff responded that "[he] was going to let them bid on it on eBay like everybody else . . . ."[1] Plaintiff later returned the boot to the Raleigh Police, who returned it to McLaurin Parking. McLaurin Parking representatives told the officer that they were satisfied with the return of the boot and did not want to do anything else. Defendants did not pursue criminal charges.

[1] Plaintiff first argues that the trial court erred by granting summary judgment in favor of defendants with regard to his claim that defendants trespassed against plaintiff's personal property when they "locked a metal object to Plaintiff's vehicle such that it could not be driven." Plaintiff cites only to the *Restatement (Second) of Torts* for the elements of trespass to chattel, without further reference to any legal authority with precedential value.

Nevertheless, we supply plaintiff with the proper elements of trespass to chattel and find that plaintiff's argument lacks merit. To satisfy a claim for trespass to chattel, a plaintiff must "demonstrate that [he] had either actual or constructive possession of the personalty or goods in question at the time of the trespass, and that there was an unauthorized, unlawful interference or dispossession of the

---

1. According to plaintiff's affidavit, plaintiff was only joking and had never put it on eBay or considered putting it on eBay.

property." *Fordham v. Eason*, 351 N.C. 151, 155, 521 S.E.2d 701, 704 (1999) (citations and quotations omitted). Actual damages, however, are not an element of trespass to chattel. *Hawkins v. Hawkins*, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991).

We are satisfied that plaintiff had, at the very least, constructive possession of his car. *See Fordham*, 351 N.C. at 155, 521 S.E.2d at 704 ("Constructive possession is a legal fiction existing when there is no actual possession, but there is title granting an immediate right to actual possession.") However, there was no "unauthorized, unlawful interference or dispossession of the property." *Id.* Plaintiff claims that the general principle that a private property owner has an "absolute right to the exclusive use and enjoyment" of his private property "does not hold true with respect to private parking lots." Plaintiff cites to criminal statutes in support of this claim. *See* N.C. Gen. Stat. § 20-219.2 (2005) (stating that it is unlawful for an unauthorized person to park in a private parking space provided that the private parking lot contains certain signage); N.C. Gen. Stat. § 20-107 (2005) (stating that tampering with a vehicle without the owner's consent is a Class 2 misdemeanor).

Plaintiff's reliance is misplaced. The first statute defines the State's right to prosecute private citizens who trespass in private parking lots, but does not and cannot define the rights between two private citizens when one citizen trespasses upon the real property of the other. The second statute defines the State's right to prosecute private citizens who tamper with a vehicle that does not belong to them, but does not and cannot provide separate recourse for the owner of the vehicle against the tamperer. Having been directed to the *Restatement*, we find that the following principle applies to the situation at hand:

> [O]ne is privileged to commit an act which would otherwise be a trespass to a chattel or a conversion if the act is, or is reasonably believed to be, necessary to protect the actor's land or chattels or his possession of them, and the harm inflicted is not unreasonable as compared with the harm threatened.

*Restatement (Second) of Torts* § 260(1) (1965).

The application of a boot to a car is an "interference" with the property. Plaintiff correctly deduced that the main purpose of a car is transportation, and that one cannot drive around with a boot attached to the wheel of one's car. However, defendants were privi-

leged to attach that boot to plaintiff's car to protect their right to exclusive possession of Lot 11. Plaintiff has provided no relevant legal authority stating otherwise.

We also note that "rightful possession 'cannot be vindicated by a bludgeon,' but must be determined by a resort to legal proceedings." *Kirkpatrick v. Crutchfield*, 178 N.C. 348, 350, 100 S.E. 602, 606 (1919) (quoting *State v. Davenport*, 156 N.C. 602, 72 S.E. 7 (1911)). Quantum provided plaintiff with a telephone number that he could have called to have the boot removed. Quantum also has an appeals process for people who contend that they were improperly booted. Plaintiff did not avail himself of either.

[2] Plaintiff next argues that the trial court erred by granting summary judgment in favor of defendants with regard to plaintiff's claim that he is entitled to recover for damage to his personal property, which he alleges was caused by defendants' unlawful actions. In his deposition, plaintiff testified that the wheel of his car "was physically damaged by the metal object locked to it by Defendants." Plaintiff also testified that he himself inflicted the damage to the wheel. Having already determined that defendants were within their rights to boot plaintiff's car, and that plaintiff inflicted the damage himself by resorting to a bludgeon rather than a legal remedy, we hold that this argument lacks merit.

[3] Plaintiff next argues that the trial court erred by granting summary judgment in favor of defendants with regard to plaintiff's claim that defendants' actions constitute unfair and deceptive trade practices. We disagree.

"To establish a *prima facie* case of unfair and deceptive trade practices, a plaintiff must show: (1) the defendant committed an unfair or deceptive trade practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." *Di Frega v. Pugliese*, 164 N.C. App. 499, 507, 596 S.E.2d 456, 462 (2004) (citation omitted). "An act is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Id.* (citation omitted). We have already determined that defendants were privileged to boot plaintiff's car. In addition, our General Assembly has specifically authorized private parking lot owners in Forsyth County to boot unauthorized vehicles, which further suggests that the act is neither unethical nor unscrupulous. Act of June 7, 1983, ch. 459, sec. 4, 1983 N.C. Sess. Laws 386 (codified at N.C. Gen. Stat. § 20-219.2(a) (2005)).

Accordingly, plaintiff failed to establish a *prima facie* case of unfair and deceptive trade practices and the trial court properly granted summary judgment to defendants on this issue.

**[4]** Plaintiff next argues that the trial court erred by granting summary judgment in favor of defendants with regard to plaintiff's claim for malicious prosecution. Again, we disagree.

> To prove a claim for malicious prosecution, a plaintiff must establish four elements: (1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff.

*Nguyen v. Burgerbusters, Inc.*, 182 N.C. App. 447, 450, 642 S.E.2d 502, 505 (2007) (citations and quotations omitted).

"[I]t cannot be said that one who reports suspicious circumstances to the authorities thereby makes himself responsible for their subsequent action, . . . even when . . . the suspected persons are able to establish their innocence." *Id.* at 450, 642 S.E.2d at 506 (citations and quotations omitted). "However, where it is unlikely there would have been a criminal prosecution of [a] plaintiff except for the efforts of a defendant, this Court has held a genuine issue of fact existed and the jury should consider the facts comprising the first element of malicious prosecution." *Becker v. Pierce*, 168 N.C. App. 671, 675, 608 S.E.2d 825, 829 (2005) (citations and quotations omitted). Defendants did contact the Raleigh Police regarding the stolen boot, and it is unlikely that the Raleigh Police would have known about the stolen boot without defendants' actions, thus satisfying the first element of malicious prosecution.

However, plaintiff fails to satisfy the second element of malicious prosecution, malice. " 'Malice' in a malicious prosecution claim may be shown by offering evidence that defendant 'was motivated by personal spite and a desire for revenge' or that defendant acted with 'reckless and wanton disregard' for plaintiffs' rights." *Id.* at 676, 608 S.E.2d at 829 (quoting *Moore v. City of Creedmoor*, 345 N.C. 356, 371, 481 S.E.2d 14, 24 (1997)) (additional citation omitted). "In an action for malicious prosecution, the malice element may be satisfied by a showing of either actual or implied malice. Implied malice may be inferred from want of probable cause in reckless disregard of the plaintiff's rights." *Nguyen*, 182 N.C. App. at 452, 642

S.E.2d at 506-07 (citations, quotations, and alterations omitted). In this case, once defendants recovered their boot, they informed the Raleigh Police that they had no further desire to press charges. The Raleigh Police proceeded with the misdemeanor larceny charge on their own steam, not defendants'. Morever, both defendants and the Raleigh Police had probable cause to believe that plaintiff had committed misdemeanor larceny. He took defendants' property, and carried it away without defendants' consent, and demonstrated his intent to deprive defendants of the property permanently when he told the investigating officer that defendants could "bid on it on eBay like everybody else . . . ." *See State v. Perry*, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982) (listing the elements of larceny). Accordingly, we find neither actual nor implied malice on the part of defendants.

We affirm the order of the trial court.

Affirmed.

Chief Judge MARTIN and Judge McCULLOUGH concur.