UNITRAC, S. A. v. SOUTHERN FUNDING CORPORATION

No. 8426SC943

(Filed 4 June 1985)

**Process § 9.1— in personam jurisdiction—insufficient contacts**

Defendant's motion for dismissal for lack of in personam jurisdiction should have been allowed where plaintiff was a Swiss company; defendant was a Florida corporation; the president of a third company called an independent agent for various yarn manufacturers in Charlotte to purchase yarn and claimed that defendant was to finance the purchase; the agent arranged that defendant's credit be approved by a New York "factor"; the agent then drew up a memorandum of sale which he mailed to defendant and a contract which he mailed to plaintiff for signature; the agent sent two copies of the signed contract to defendant but defendant did not acknowledge receipt of the memorandum of sale or of the contract; the yarn was shipped through Charleston, South Carolina to Florida on carriers based in North Carolina; and invoices were sent to defendant from New York. The contract was clearly not performed in North Carolina, the contract was not made between defendant and plaintiff's agent, and assuming that defendant ratified the agreement by failing to respond when it received the memorandum of sale and contract, there was no evidence that the conduct by which defendant ratified the agree-

ment occurred in North Carolina. Moreover, the use of North Carolina carriers was purely fortuitous and neither of the parties did business in North Carolina or was a resident of North Carolina. G.S. 55-145(a)(1).

APPEAL by defendant from *Kirby, Judge.* Judgment entered 14 May 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 18 April 1985.

On 3 October 1980, Stanton Friedman, president of Grove Mills, Inc., located in Opa-locka, Florida, telephoned John L. Stickley, Jr., of Charlotte, North Carolina. Stickley was an independent commissioned agent for various yarn manufacturers, including the plaintiff in this case, Unitrac, a Swiss company. Friedman told Stickley that he wanted to purchase some yarn, but that American Southern Dyeing and Finishing in Opa-locka was to finance the purchase. American Southern Dyeing and Finishing was not actually in existence at that time, but had been dissolved by merger on 30 November 1979 into Southern Funding Corporation, also a Florida corporation, and the defendant in this case.

Stickley arranged that the credit of American Southern be approved by a "factor," J. P. Maguire, in New York. He drew up a memorandum of sale, which he mailed to American Southern (then Southern Funding). He also mailed a contract to Unitrac, in Switzerland, for signature. He then sent two copies of the signed contract to American Southern. Stickley never communicated directly, by letter or telephone, with officers of Southern Funding. They did not return or acknowledge receipt of the memorandum of sale or contract; at trial they denied receiving them.

On 3 October 1980 Stickley telexed a warehousing agency in New York, instructing it to ship and bill for the yarn. The New York warehousing agents arranged the shipment and sent out invoices. On 8 October and 15 October 1980, two shipments of yarn, at 15,000 pounds each, were shipped from Charleston, South Carolina, to Grove Mills in Florida. The carriers were North Carolina companies. Invoices were apparently sent to Southern Funding from New York. Officials of Southern Funding claimed that they did not receive but one of the invoices, and that was in March 1981. On receipt of this invoice, they claimed to have telephoned

Friedman, who they claim acknowledged that a mistake had occurred and requested that the invoice be sent to him.

The bill for the yarn was never paid. Unitrac brought suit in Mecklenburg County Superior Court against Southern Funding, two of its predecessors, who were subsequently dismissed, and Grove Mills, who did not participate because it filed for bankruptcy. Southern Funding moved for dismissal for lack of in personam jurisdiction over it. This was denied, and after a trial by jury, Southern Funding was found liable for the price of the yarn, $52,275.

Defendant appeals.

*Mullins & Van Hoy, by Michael P. Mullins, for defendant appellant.*

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by Fred T. Lowrance and Sally Nan Barber, for plaintiff appellee.*

ARNOLD, Judge.

The question which determines this appeal is whether or not Mecklenburg County Superior Court had in personam jurisdiction over defendant Southern Funding Corporation, a resident of Florida. It did not.

Plaintiff Unitrac, Inc., claims that defendant had two contacts with North Carolina, which provided the basis for in personam jurisdiction. These were (1) the agreement between Unitrac and Southern Funding for the sale of yarn, as evidenced by a memorandum of sale and contract prepared by John L. Stickley in Charlotte, North Carolina, and (2) the fact that the yarn was shipped to Florida from Charleston, South Carolina, by carriers based in North Carolina. Plaintiff claims that these contacts satisfy the "long-arm" statute G.S. 55-145(a)(1) and the constitutional requirement of due process of law.

Under G.S. 55-145(a)(1), the contract can be the basis of in personam jurisdiction if it is made or to be performed in North Carolina. Whether the exercise of jurisdiction under G.S. 55-145(a)(1) comports with due process in turn hinges on whether Southern

Funding, the non-resident defendant, had certain "minimum contacts" with North Carolina such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). These contacts cannot be the result of "unilateral activity" of those who claim some relationship with the defendant Southern Funding; rather, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed. 2d 1283, 1298 (1958).

Where jurisdiction is grounded on a contract, due process is satisfied only if that agreement has a "substantial connection," with North Carolina, *Byham v. House Corp.*, 265 N.C. 50, 57, 143 S.E. 2d 225, 232 (1965); *Goldman v. Parkland*, 277 N.C. 223, 229, 176 S.E. 2d 784, 788 (1970). Our courts have found that such a connection exists if the contract is made or is to be performed in North Carolina (thus confirming the constitutionality of the long-arm statute). *Harrelson Rubber Co. v. Dixie Tire & Fuels*, 62 N.C. App. 450, 453-54, 302 S.E. 2d 919, 921 (1983); *General Time Corp. v. Eye Encounter, Inc.*, 50 N.C. App. 467, 274 S.E. 2d 391, 394 (1981). Generally, a contract is "made" where the final act necessary to make it a binding agreement occurs. *General Time Corp.*, 50 N.C. App. at 472, 274 S.E. 2d at 394.

In the present case, the contract clearly was not performed in North Carolina. The yarn was spun in Switzerland, and shipped to South Carolina. Delivery was then made from South Carolina to Florida. Payment was allegedly to be made by defendant in Florida to a "factor" in New York.

The parties are in dispute over the question of where the contract was made. The plaintiff relies on *Goldman, supra,* and argues that the final act necessary to make the agreement binding occurred when Mr. Stickley, in Charlotte, received Mr. Friedman's order of yarn and then deposited a memorandum of sale and contract in the mail.

The defendant argues, however, that the documents prepared by Mr. Stickley provided expressly that the yarn sale agreement

did not constitute a binding contract until accepted and confirmed in writing by the plaintiff Unitrac, in Switzerland. The memorandum of sale, which Mr. Stickley said he sent to defendant, had such a term.

Plaintiff responds, however, that this transaction is a sale of goods, governed by the U.C.C., and that the documents only confirmed an underlying oral agreement. This agreement was made, plaintiff says, when Mr. Stickley acted, and the signature of Unitrac was a mere formality.

Even if we accept plaintiff's analysis, the problem, however, is that the underlying agreement was not originally made between *defendant* and plaintiff's agent, Mr. Stickley. It was made between Mr. Stickley and Mr. Friedman, who, as the jury found, was not an agent of defendant, authorized to place an order on defendant's behalf. A contract binding defendant was not made until defendant did some act indicating its intent to be bound, *i.e.*, recognized the existence of the contract. *See* G.S. 25-2-204.

The plaintiff argues, and the jury found, that the defendant "ratified" the yarn sale agreement by failing to respond when it received the memorandum and contract for the sale of the yarn. For the purposes of this discussion, we assume that the ratification did occur. Further, we find that the ratification was the last act needed to make a binding contract between defendant and plaintiff.

There is no evidence in the record that the conduct by which defendant ratified the contract, however, involved any contact with North Carolina. Defendant's officers did not call Mr. Stickley or go to North Carolina to consult with him. Rather, the evidence suggests that if defendant received the documents and approved them, it did so in Florida.

Given that the final act necessary to make the contract binding occurred outside North Carolina, and that the contract was performed entirely outside North Carolina, we do not find that the contract's connection with North Carolina was so "substantial" as to support the exercise of in personam jurisdiction by a North Carolina court consistent with G.S. 55-145(a)(1) or the due process clause.

Even if defendant's officers recognized from the documents that Mr. Stickley was involved in the yarn agreement and that he was located in North Carolina, we do not find that this recognition and defendant's failure to object to the yarn sale is sufficient to show that defendant "purposely availed" itself of the privilege of doing business in North Carolina.

Consideration of other factors in this case confirms our view that the defendant should not have been subjected to the in personam jurisdiction of the North Carolina courts. The record suggests that the fact that North Carolina carriers shipped the yarn was purely fortuitous. Neither of the parties did business in North Carolina or was a resident of North Carolina. Since the plaintiff was not a resident of North Carolina, the State had no special interest in asserting jurisdiction to protect one of its citizens. Finally, Mr. Friedman, who initiated the yarn sale, and whose testimony would have been extremely valuable, was a resident of Florida, and could have been subpoenaed there.

There are lacking in this case the minimum contacts which are a constitutional prerequisite to the exercise of this state's power over the defendant pursuant to G.S. 55-145(a)(1).

The defendant's motion for dismissal should have been granted.

Reversed.

Judges PHILLIPS and COZORT concur.