CHARLES LESTER THORPE AND MARY LOUISE THORPE, ADMINISTRATORS OF THE ESTATE OF CHARLES LEAMON THORPE, PLAINTIFFS v. TJM OCEAN ISLE PARTNERS LLC; COASTAL STRUCTURES CORPORATION; COASTAL CAROLINA CONSTRUCTION AND DEVELOPMENT INC.; UNIDENTIFIED VESSEL, DEFENDANTS

No. COA12-99-2

(Filed 16 October 2012)

**Wrongful Death—inherently dangerous activity—contributory negligence—no admiralty jurisdiction**

The trial court did not err in a wrongful death case by granting defendants' motions for summary judgment on all claims. While the facts presented some indicia of inherently dangerous activity from the combination of construction work, water, and electricity, plaintiffs' claims were barred as a matter of law under the doctrine of contributory negligence. Decedent knew about the regulatory violations and the associated danger, but proceeded with his work anyway. Further, plaintiff's claims did not fall within admiralty jurisdiction.

Appeal by Plaintiffs from order entered 28 September 2011 by Judge Robert F. Floyd in Brunswick County Superior Court. Heard in the Court of Appeals 5 June 2012. Petition for Rehearing granted 6 September 2012.

*Hodges & Coxe, PC, by Bradley A. Coxe, for Plaintiff-appellants.*

*Crossley McIntosh Collier Hanley & Edes, PLLC, by Justin K. Humphries and Andrew J. Hanley, for Defendant-appellee TJM Ocean Isle Partners LLC.*

*Cranfill Sumner & Hartzog LLP, by Colleen N. Shea, Melody J. Jolly, and Carolyn C. Pratt, for Defendant-appellee Coastal Structures Corporation.*

*Williams Mullen, by Rebecca A. Scherrer and H. Mark Hamlet, for Defendant-appellee Coastal Carolina Construction and Development, Inc.*

HUNTER, JR., Robert N., Judge.

This is a wrongful death action arising from the electrocution of Charles Leamon Thorpe ("Thorpe") while he was building a pier in Ocean Isle Beach, North Carolina. The administrators of Thorpe's estate, Charles Lester Thorpe and Mary Louise Thorpe ("Plaintiffs"), appeal from the trial court's order granting summary judgment in favor of all defendants. An opinion affirming the trial court's order was filed by this Court on 7 August 2012. Plaintiffs filed a Petition for Rehearing, which was granted on 6 September 2012. Upon reexamination, we affirm the trial court's order, but we modify the originally filed opinion. This opinion supersedes the previous opinion filed 7 August 2012.

## I. Factual & Procedural Background

In late 2006, Defendant TJM Ocean Isle Partners LLC ("TJM") purchased the Pelican Point Marina in Ocean Isle Beach, with the intent to refurbish and expand the marina facilities and to reopen the marina as the Ocean Isle Marina & Yacht Club ("Ocean Isle"). Part of the expansion plan consisted of adding floating docks to the marina. Access to one of these docks required installation of a ramp, which would run from the end of a newly built wooden pier down to the dock below. TJM retained Defendant Coastal Structures Corporation ("Coastal Structures") to build the pier and install the ramp, and Coastal Structures, in turn, subcontracted with Coastal Carolina Construction and Development, Inc. ("Coastal Carolina") to build the pier.

During the week of 13 June 2008, Coastal Structures informed Coastal Carolina's owner, Jeremy Ridenhour ("Ridenhour"), that the pier needed to be built by the end of the week. TJM was eager to provide dock access to its customers at Ocean Isle during the summer boating season. Ridenhour was busy with another project, however, so he referred Coastal Structures to his longtime friend, Charles Leamon Thorpe ("Thorpe") d/b/a Buck's Construction.

Thorpe arrived at Ocean Isle on the morning of 13 June 2008 with four employees.[1] When Thorpe's employees inquired where they could obtain power for their tools, they were told[2] to use an outlet in the Sailfish Building, one of the marina's two boat storage buildings. One of Thorpe's employees went to plug an extension cord into the outlet and observed there was no Ground Fault Circuit Interrupter ("GFCI") protection. Another member of Thorpe's crew confirmed the outlet was not GFCI protected and reported this to Thorpe. Thorpe responded by telling his crew to "get to work."

That afternoon, Thorpe decided cross-braces needed to be installed between two of the pier's wooden uprights. Thorpe asked one of his crew to install the cross-braces, but the crewman refused, citing the dangers of drilling so close to the water. Thorpe himself began the task, which required predrilling pilot holes into the wooden uprights. The lower holes were in close proximity to the water line, requiring Thorpe to sit on the edge of the floating dock with his legs dangling inches above the water. Recognizing the danger of the situation, one of Thorpe's employees urged Thorpe to hold off on the work until the next morning when the tide would be lower. Another worker observed Thorpe working and warned him "he couldn't be more dangerous if he was standing in the water."

Plaintiffs allege that a few minutes later, while Thorpe was drilling the lower holes, a twenty-six-foot Bayliner boat passed by the marina at an excessive rate of speed,[3] causing a large wake. The wake washed over the drill in Thorpe's hands, subjecting Thorpe to an electric shock. Because the drill was not connected to a GFCI-protected outlet, the power to the drill did not automatically shut off. The continuing shock contracted Thorpe's muscles, freezing his grip on the drill and pulling him into the water. From the water, Thorpe yelled "unplug me." One of Thorpe's crew unplugged the drill and pulled him out of the water. Thorpe was administered CPR and transported to Brunswick Community Hospital, where he was pronounced dead at 3:32 p.m. The official cause of death was described as electrocution caused by an electric drill coming into contact with the water.

---

1. Coastal Structures and Coastal Carolina dispute who actually contracted with Thorpe to perform the work at the marina.

2. It is unclear from the record whether an employee of TJM or of Coastal Structures told Thorpe's employees where to obtain power for their tools.

3. Plaintiffs claim the boat's speed was excessive in light of the no-wake signs flanking either side of the marina.

On 10 March 2010, Plaintiffs filed a complaint in Brunswick County Superior Court, alleging claims of negligence and wrongful death and naming TJM, Coastal Structures, and Coastal Carolina (together, "Defendants") as defendants. Plaintiffs' complaint additionally named an Unidentified Vessel (the boat that allegedly caused the wake) as a defendant, but this vessel was never identified and consequently was never a party to Plaintiffs' suit. Plaintiffs' complaint originally cited the saving-to-suitors clause in 28 U.S.C. § 1333 as the source of the trial court's jurisdiction over their claims. Pursuant to an order entered 11 June 2010, Plaintiffs amended their complaint to include N.C. Gen. Stat. § 7A-240 as an alternative source of the trial court's jurisdiction.

Each defendant timely filed an answer, denying liability on all claims. Each defendant also filed cross-claims against the other defendants for indemnification and contribution. In addition, Defendant Coastal Carolina filed third-party claims for indemnification and contribution against Charles Lester Thorpe, Thorpe's father and one of the administrators of Thorpe's estate, for allegedly providing the drill that contributed to Thorpe's death.

Following discovery, each defendant moved for summary judgment on all claims. At or about this time, the Guardian Ad Litem representing Thorpe's minor son moved to intervene in the case pursuant to N.C. Gen. Stat. § 1A-1, Rule 24. These matters came on for hearing in Brunswick County Superior Court on 27 September 2011, Judge Robert F. Floyd presiding. By order entered 28 September 2011, the trial court granted summary judgment in favor of all defendants on all claims. The order dismissed without prejudice the Guardian Ad Litem's motion to intervene, Defendants' cross-claims, and Coastal Carolina's third-party claim as moot. Plaintiffs timely filed notice of appeal with this Court on 5 October 2011.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2011), as Plaintiffs appeal from a final order of the superior court as a matter of right.

## III. Analysis

Plaintiffs contend the trial court erred in granting Defendants' motions for summary judgment on all claims. We disagree, and we affirm the trial court's ruling.

"This Court reviews orders granting summary judgment de novo." *Foster v. Crandell*, 181 N.C. App. 152, 164, 638 S.E.2d 526, 535 (2007). When moving for summary judgment, the movant has the burden to show "(1) an essential element of the non-movant's claim is nonexistent, (2) the non-movant cannot produce evidence to support an essential element of his claim, or (3) the non-movant cannot surmount an affirmative defense which would bar his claim." *Taylor v. Ashburn*, 112 N.C. App. 604, 606-07, 436 S.E.2d 276, 278 (1993). "Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Lilley v. Blue Ridge Elec. Membership Corp.*, 133 N.C. App. 256, 258, 515 S.E.2d 483, 485 (1999). "A court ruling upon a motion for summary judgment must view all the evidence in the light most favorable to the non-movant, accepting all its asserted facts as true, and drawing all reasonable inferences in its favor." *Id.*

Plaintiffs contend the trial court erred in granting Defendants' motions for summary judgment because Defendants violated their nondelegable duty of care to provide a safe workplace. Plaintiffs recognize the general rule that neither a general contractor nor a land-owner who hires a general contractor owes a duty to a subcontractor's employees, *see Woodson v. Rowland*, 329 N.C. 330, 350, 407 S.E.2d 222, 234 (1991), but argue this case falls within an exception to the general rule because the subcontracted work was inherently dangerous, *see id.* at 356, 407 S.E.2d at 238 (recognizing the "inherently dangerous" exception). In the alternative, Plaintiffs argue Defendants violated their duty of ordinary care to Thorpe under a theory of common law premises liability. While we note that the facts in the instant case present some indicia of inherently dangerous activity—for instance, the combination of construction work, water, and electricity—we need not reach the issue of Defendants' duty of care, as we hold Plaintiffs' claims are barred as a matter of law under the doctrine of contributory negligence.

Under North Carolina law, a plaintiff is completely barred from recovering for any injury proximately caused by the plaintiff's contributory negligence. *Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 401, 549 S.E.2d 867, 869 (2001). Federal admiralty law, on the other hand, applies the doctrine of comparative negligence, according to which a plaintiff's negligence reduces the plaintiff's recovery in direct proportion to the plaintiff's fault. *Pope & Talbot, Inc. v. Hawn*, 346

**THORPE v. TJM OCEAN ISLE PARTNERS LLC**

[223 N.C. App. 201 (2012)]

U.S. 406, 409 (1953). Plaintiffs contend this is an admiralty case requiring application of comparative negligence, not contributory negligence. We conclude the doctrine of contributory negligence applies because Plaintiff's claim does not fall within admiralty jurisdiction.

"The [federal] district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (2006). The saving-to-suitors clause "allows state courts to entertain *in personam* maritime causes of action," subject to the condition that any remedy provided be consistent with federal maritime standards. *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222–23 (1986).

In determining whether admiralty jurisdiction is appropriate in this case, we apply the test set out in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). The first prong of the *Grubart* analysis asks whether the tort occurred on navigable waters or whether the injury suffered on land was caused by a vessel on navigable waters. *Id.* at 534. This is known as the "location test." *See id.* The second step of the analysis, known as the "connection test," raises two issues. First, we must determine if the incident had a "potentially disruptive impact on maritime commerce[.]" *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 364 n.2 (1990)). If so, we then evaluate whether the activity giving rise to the incident had a "substantial relationship to traditional maritime activity." *Id.* A party seeking to invoke federal admiralty jurisdiction pursuant to the savings-to-suitors clause over a tort claim must satisfy both the location and connection tests. *Id.*

We determine Plaintiffs' claims cannot survive the first half of the *Grubart* analysis, "the location test." The tort at issue in this case did not occur on navigable waters, as "it has been uniformly held that piers, docks, wharves and similar structures extending over navigable waters are extensions of land, though their use and purpose be maritime." *Hastings v. Mann*, 340 F.2d 910, 911 (4th Cir.), *cert. denied*, 380 U.S. 963 (1965). Thus, Plaintiffs' claims are not cognizable in admiralty unless the injury was caused by a vessel on navigable waters. *Id.*

Plaintiffs acknowledge that the "caused by a vessel" portion of *Grubart*'s location test stems from the language of the Admiralty Jurisdiction Extension Act of 1948, 46 U.S.C. § 30101 (2006). In *Pryor v. Am. President Lines*, the 4th Circuit explained that:

Congress passed the Act "specifically to overrule or circumvent" a line of Supreme Court cases holding that maritime law did not extend to torts culminating in injury on land even when a ship on navigable waters was clearly the proximate cause. There is no indication in the legislative history that Congress intended to go further and extend maritime law to land-based torts where a ship is not at fault, *but supplies only a fortuitous but-for connection with an injury.*

*Pryor*, 520 F.2d 974, 979 (4th Cir. 1975) (citing *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 209, 209 n.8 (1971)) (emphasis added).

Accordingly, the court in *Pryor* held "that *a ship or its appurtenances must proximately cause an injury* on shore to invoke the Admiralty Extension Act and the application of maritime law." *Id.* (emphasis added). Our Court has concurred in this assessment. *See Wolfe v. Wilmington Shipyard, Inc.*, 135 N.C. App. 661, 666–67, 522 S.E.2d 306, 310 (1999) (citing *Pryor* and holding a plaintiff's claim not subject to admiralty jurisdiction where the injury occurred on land and was caused by neither the ship itself nor its appurtenances).

Plaintiffs allege the injury in this case occurred while Thorpe was standing on a dock, when wake from a passing vessel washed over his drill. Plaintiffs contend this fact is sufficient to invoke admiralty jurisdiction. However, wake from a vessel can only be considered "appurtenant" to that vessel in the loosest sense of the word. Therefore, it cannot be said that the injury in this case was "caused by a vessel on navigable waters," in that neither the ship itself, nor its appurtenances, proximately caused an injury on land. Ultimately, the facts of this case suggest the potential existence of a "land-based tort[ ] where a ship is not at fault, but supplies only a fortuitous but-for connection with an injury." *Pryor*, 520 F.2d at 979. Therefore, Plaintiffs' claim is not cognizable in admiralty, and the law of North Carolina contributory negligence applies.

We then turn to the issue of whether Thorpe's conduct in the instant case bars Plaintiffs' recovery as a matter of law. As previously stated, under North Carolina law, a defendant can raise the plaintiff's contributory negligence as an affirmative defense to bar the plaintiff's claim in its entirety. *Sawyer*, 144 N.C. App. at 401, 549 S.E.2d at 869. To prove a plaintiff's contributory negligence, the defendant must demonstrate (1) that the plaintiff failed to act with due care and (2) such failure proximately caused the injury. *Shelton v. Steelcase*, 197 N.C. App. 404, 424, 677 S.E.2d 485, 499 (2009). Where the plaintiff is

injured by an unsafe condition, "[t]he doctrine of contributory negligence will preclude a defendant's liability if the [plaintiff] actually knew of the unsafe condition or if a hazard should have been obvious to a reasonable person." *Allsup v. McVille, Inc.*, 139 N.C. App. 415, 416, 533 S.E.2d 823, 824 (2000), *aff'd*, 353 N.C. 359, 543 S.E.2d 476 (2001) (per curiam). Because a reasonable care standard is used to determine a plaintiff's negligence, the question of contributory negligence is ordinarily one for the jury. *Sawyer*, 144 N.C. App. at 401, 549 S.E.2d at 869-70. However, " '[w]here the evidence is uncontroverted that a party failed to use ordinary care and that want of ordinary care was at least one of the proximate causes of the injury,' summary judgment is appropriate." *Id.* at 401, 549 S.E.2d at 870 (citation omitted).

Here, the evidence is uncontroverted that Thorpe was aware that the drill he was using was plugged into an outlet that lacked GFCI protection. Thorpe was alerted to this fact but responded simply by telling his employees to "get to work." At least two people warned Thorpe about the danger he was exposing himself to by drilling so close to the surface of the water. One of his employees suggested that he come back in morning, when the tide was low. Another worker noticed Thorpe sitting on the deck and warned him about the danger.

Plaintiffs argue that Thorpe was not negligent because he could *assume* the electrical outlet he was using was GFCI protected, as required by the North Carolina Electrical Code. *See* N.C. Electrical Code §§ 555.19(B)(1), 590.6(A) (2008) (requiring GFCI protection on electrical receptacles in boathouses and when a receptacle is temporarily used for construction). For this proposition, Plaintiffs cite *Shelton*, where this Court held that " 'one is not required to anticipate the negligence of others; *in the absence of anything which gives or should give notice to the contrary*, one is entitled to assume and to act on the assumption that others will exercise ordinary care for their own or others' safety.' " 197 N.C. App. at 425, 677 S.E.2d at 500 (emphasis added) (quoting *Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 469, 279 S.E.2d 559, 563 (1981)). Plaintiffs' reliance on *Shelton* is misplaced because *Shelton* speaks in terms of an assumption in the absence of notice. Thorpe was aware the outlet he was using had no GFCI protection. Once he was aware of that, he could no longer assume there was GFCI protection because the North Carolina Electrical Code or any other regulations required it.

We note that this Court's ruling in *Sawyer* supports our conclusion. In *Sawyer*, the plaintiff was installing acoustic ceiling tiles in a

grocery store when the wheels of the rolling scaffolding he was standing on slipped into an open hole in the floor, causing the scaffold to collapse and throwing him to the ground. 144 N.C. App. at 400, 549 S.E.2d at 869. The hole was one of many left open by another independent contractor on site. *Id.* Before his fall, the plaintiff noticed the holes and talked to the general contractor's supervisor about them. *Id.* The plaintiff even attempted to cover the holes, but when he was unable to find anything to use as a cover, he went forward installing the tiles, with the wheels of his scaffolding unlocked and mere inches from a hole. *Id.* at 400, 549 S.E.2d at 869. The plaintiff argued that the independent contractor violated OSHA regulations by leaving the holes uncovered. *Id.* at 400–01, 549 S.E.2d at 869. Although this Court agreed with the plaintiff that the independent contractor may have violated OSHA regulations, thereby providing sufficient evidence to survive summary judgment on the issue of the independent contractor's negligence, we nevertheless held the plaintiff's contributory negligence could be determined as a matter of law, and his claims were barred. *Id.* at 401-02, 549 S.E.2d at 869–70.

Like the plaintiff in *Sawyer*, Thorpe knew about the regulatory violations and the associated danger but proceeded with his work. We accordingly conclude that even if Defendants owed Thorpe a duty of care, Thorpe's contributory negligence barred Plaintiffs' claims as a matter of law. We hold the trial court did not err in granting Defendants' motions for summary judgment on all claims.

## IV. Conclusion

For the foregoing reasons, the trial court's order is

AFFIRMED.

Chief Judge Martin and Judge Elmore concur.