An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-882

Filed 18 June 2025

Wake County, No. 23 CVS 008595-910

DEMARIA BUILDING COMPANY, INC., Plaintiff,

v.

LABORATORY DESIGN, EQUIPMENT & INSTALLATIONS LLC d/b/a LABORATORY DESIGN & EQUIPTMENT, Defendant.

Appeal by Defendant from order entered 12 June 2024 by Judge Hoyt G. Tessener in Wake County Superior Court. Heard in the Court of Appeals 19 March 2025.

> *Williams Mullen, by attorneys Camden R. Webb and Killian K. Wyatt, for defendant-appellant.*

> *Michael Best & Friedrich LLP, by attorneys Justin G. May and Michael G. Schietzelt, for plaintiff-appellee.*

STADING, Judge.

Defendant Laboratory Design, Equipment & Installations LLC ("LDEI") appeals from an order granting summary judgment for Plaintiff DeMaria Building Company, Inc. ("DeMaria") in an action for breach of contract. On appeal, LDEI contends the trial court erred by granting summary judgment because a genuine

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

issue of material fact exists of whether the parties formed a valid contract. After careful review, we affirm.

## I. Background

The Naval Facilities Engineering Systems Command contracted with DeMaria, a general contractor, to construct a new ambulatory care dental clinic (the "Project") at Marine Corps Air Station New River in Jacksonville. LDEI, a subcontractor, is in the business of manufacturing, delivering, and installing cabinets and countertops. On 8 August 2019, LDEI submitted a bid to DeMaria "to provide custom-made medical casework and stainless-steel countertops" for the Project.

On 5 December 2019, LDEI received a draft "Subcontract Agreement" (the "Contract" or "Agreement") from DeMaria. The Agreement provided DeMaria would pay LDEI $89,830 in exchange for LDEI manufacturing, delivering, and installing custom medical cabinets and stainless-steel countertops for the Project:

> **THE SUBCONTRACTOR AGREES AS FOLLOWS:**
>
> 1. To furnish in accordance with plans and specifications all labor, materials, equipment and services necessary or required for the receiving, unloading, storing, distribution to station of work, protecting, and complete installation of that part of the construction of this project as described as follows:
>
> Work associated with . . . Ambulatory Care Center & Dental Clinic Replacement. Project located at the MCAS New River in Jacksonville, NC. . . .
>
> . . . .

Provide all documentation, materials, means and methods, and installation for work associated, and reasonably inferred to be included in noted specifications and scope of work.

- **Spec section 123570 Healthcare Casework . . . .**
- **Spec section 123600 Countertops . . . .**

2. The Subcontractor shall commence work at the site within three (3) days of notice to proceed from the Contractor, and if interrupted for any reason, the Subcontractor shall resume work within two (2) working days from the Contractor's notice to do so.

3. The Subcontractor agrees to all of DeMaria Building Company Subcontractor Terms and Conditions . . . .

**THE CONTRACTOR AGREES AS FOLLOWS:**

1. To Pay the Subcontractor for the performance of this Subcontract Agreement, subject to the terms hereof, the sum of $89,830.00.

The Agreement was printed on DeMaria's letterhead and referenced both DeMaria and LDEI as parties. On 10 September 2020, LDEI signed the Agreement and returned it to DeMaria; DeMaria did not sign at this time. The Agreement did not contain a required date for acceptance.

The Agreement's terms and conditions provided, in pertinent part:

THESE SUBCONTRACTOR TERMS AND CONDITIONS (the "Terms") are applicable to and shall govern the Subcontract Agreement (the "Agreement") made by and between DeMaria Building Company, Inc., . . . on the one hand, and Subcontractor (as defined in the Agreement), on the other hand, which Agreement shall be deemed effective as of the date of the Agreement (the "Effective Date").

. . . .

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

Subcontractor shall begin, perform and complete the Work covered by this Contract according to the Contractor's project work schedule as such Schedule is established or revised from time to time by Contractor ("Project Schedule") or as directed by Contractor in accordance with the actual progress of the Work of the Project so as not to delay the work of others.

. . . .

The Scope of Work for the Project shall be as set forth in the Agreement. Execution of the Subcontract Agreement, and/or commencement of the Work by Subcontractor, and/or preparation for the commencement of the Work by Subcontractor, shall constitute acceptance by the Subcontractor of the terms and conditions of said Scope of Work and the Agreement, including these Terms.

. . . .

Neither the Subcontract price nor the time for performance shall be increased due to changes in taxes, tariffs or other similar charges, or material or labor price increases that are enacted after the date of the Subcontract Agreement unless the Contractor is able to obtain a corresponding increase from the Owner.

. . . .

Notwithstanding any provision of the Agreement to the contrary, in the event of any dispute between Contractor and Subcontractor, Subcontractor shall continue to perform all of its obligations under the Agreement and avoid causing any delays or disruptions to the Work and/or the Project. Subcontractor shall not stop the Work, including any changed Work, in the event of a dispute as to the validity of claims for extra work payments owed as long as all uncontested amounts have been paid in accordance with the Agreement.

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

The incorporated terms and conditions allowed the parties to adjust LDEI's compensation to account for material costs through a "change order," provided that such changes received approval from the Naval Facilities Engineering Systems Command. On 12 May 2022, LDEI's president called DeMaria's project manager, stating the original contract price was insufficient due to COVID-19 related material cost increases. During this call, LDEI's president requested an "additive change order," stated the change order would "be used to cover the huge material price increases only," and added that none of these funds were for "overhead or profit." DeMaria acknowledged the issue in a follow-up email, stating "we understand you are facing a material cost increase" and asked LDEI to provide "record of material cost increase for materials that will be release[d] within the next 30 days." As Project discussions continued throughout 2022, DeMaria reached out multiple times to LDEI for the required material cost documentation to no avail. LDEI began manufacturing on 12 August 2022 and finished on 21 November 2022.

On 22 February 2023, LDEI again requested a change order of $25,582. The next day, DeMaria countersigned the Agreement—over two years after LDEI had signed it. On 22 March 2023, DeMaria again requested supporting documentation for the material cost increase as required by the incorporated terms and conditions. After multiple exchanges, LDEI submitted the requested supporting documentation, but stated it would not ship or install any materials until the $25,582 change order was approved. After DeMaria analyzed the documentation, it denied the change

order, citing prior payments to LDEI of $76,030. DeMaria requested LDEI to install the cabinets by the Project's deadline, 10 April 2023, in accordance with the Contract's "time is of the essence" clause. At this time, LDEI refused to deliver or install the cabinets.

DeMaria filed a complaint against LDEI on 14 March 2023, alleging LDEI breached the Agreement by failing to perform. A month later, DeMaria moved for a temporary restraining order and preliminary injunction. The trial court granted DeMaria's temporary restraining order, and ordered LDEI to "deliver, cause to be delivered, or otherwise allow [DeMaria] to take possession of all casework, countertops, and any other items manufactured for the purpose of completing the scope of work defined by the Subcontract Agreement between the parties[.]" Thereafter, the trial court extended the temporary restraining order and modified its terms as follows:

> [T]he products that are the subject of [DeMaria's] Motion for TRO and Preliminary Injunction consist of cabinets and countertops . . . under this Order, [LDEI] shall not take any action to cause those products to be damaged, dissipated, destroyed or otherwise removed from the custody of the manufacturers; [ ] the purpose of this Order is to ensure that the products at issue are held safely, intact, and without damage until the Court issues its ruling on Plaintiff's Motion for Preliminary Injunction.

After a hearing, the trial court granted DeMaria's preliminary injunction on 8 May 2023. That order stated, "[LDEI] shall perform its obligation under the Subcontract Agreement to deliver, or cause to be delivered, the healthcare case work

and countertops for which [DeMaria] contracted no later than 10 A.M. on Friday, May 12, 2023." DeMaria ultimately received delivery of the goods from LDEI six months after the Project's deadline.

On 19 April 2024, DeMaria moved for summary judgment against LDEI on its breach of contract claim. The trial court granted DeMaria's motion for summary judgment and LDEI appealed.

## II. Jurisdiction

This Court has jurisdiction to consider LDEI's appeal pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2023) ("From any final judgment of a superior court . . . ."). A final judgment on the merits occurs even if subsequent hearings for collateral issues are ordered such as costs and attorney's fees. *See Veazey v. Durham*, 231 N.C. 357, 361–62, 57 S.E.2d 377, 381 (1950) ("A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court."); *see also Duncan v. Duncan*, 366 N.C. 544, 546, 742 S.E.2d 799, 801 (2013) ("An order that completely decides the merits of an action therefore constitutes a final judgment for purposes of appeal even when the trial court reserves for later determination collateral issues such as attorney's fees and costs.").

## III. Analysis

LDEI argues the trial court committed error by granting summary judgment for DeMaria because genuine issues of material fact remain of whether the parties formed a valid contract. More specifically, LDEI asserts a lack of mutual assent since

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

the Agreement was not accepted by DeMaria within a reasonable time. Following a careful review, we disagree.

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (internal quotation marks and citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Tillman v. Jenkins*, 289 N.C. App. 452, 460, 889 S.E.2d 504, 510 (2023) (citation omitted).

The moving party "has the burden of establishing the lack of any triable issue of fact. His papers are carefully scrutinized and all inferences are resolved against him." *Kidd v. Early*, 289 N.C. 343, 352, 222 S.E.2d 392, 399 (1976). An issue is material if it is "supported by substantial evidence . . . and . . . the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action . . . ." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (citations and quotation marks omitted). "Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Fonvielle v. N.C. Coastal Res. Comm'n*, 288 N.C. App. 284, 288, 887 S.E.2d 93, 96 (2023) (citations and quotation marks omitted). "A court ruling upon a

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

motion for summary judgment must view all the evidence in the light most favorable to the non-movant, accepting all its asserted facts as true, and drawing all reasonable inferences in its favor." *Thorpe v. TJM Ocean Isle Partners LLC*, 223 N.C. App. 201, 205, 733 S.E.2d 185, 188 (2012) (citation omitted).

### A. Predominant Factor Test—UCC or Common Law

As a preliminary matter, we must determine the appliable law—the Uniform Commercial Code ("UCC") or common law principles. *See Hensley v. Ray's Motor Co. of Forest City, Inc.*, 158 N.C. App. 261, 265, 580 S.E.2d 721, 724 (2003) ("[T]his Court must determine whether the contract is controlled by the UCC as a sale of goods or is governed by the common law of contracts as a service contract."). LDEI's arguments operate under the assumption that the Contract was for services and common law principles apply. For the reasons below, we hold the Agreement is governed by the UCC. *See* 2 North Carolina Contract Law § 6-9 (2025) ("When a court analyzes the mixed contract and determines which factor predominates, the court should either apply the Code to the entire transaction or not apply the Code at all.").

North Carolina has codified the UCC under Chapter 25 of the General Statutes. *See* N.C. Gen. Stat. § 25-1-101(a) (2023). "The scope of the UCC is limited to 'transactions in goods' and does not apply to contracts for the provision of services." *Hensley*, 158 N.C. App. at 265, 580 S.E.2d at 724 (citation omitted). "'Goods' means all things (including specially manufactured goods) which are movable at the time of

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action."[1]  N.C. Gen. Stat. § 25-2-105(1).  When faced with a mixed contract—one involving the sale of goods and services—we apply the predominant factor test:

> [W]here the predominant factor of a contract is the rendition of services with the sale of goods incidentally involved, the UCC is not applicable. However, where the predominant factor of the contract is the sale of goods with the provision of services incidentally involved, the UCC controls.
>
> Factors which have been used in determining whether a mixed contract should be governed by the UCC include the following: "(1) the language of the contract, (2) the nature of the business of the supplier, and (3) the intrinsic worth of the materials." *See, e.g.*, *Princess Cruises, Inc. v. General Elec. Co.*, 143 F.3d 828, 833 (4th Cir. 1998); *Parks v. Alteon, Inc.*, 161 F. Supp. 2d 645, 649 (M.D.N.C. 2001).

*Hensley*, 158 N.C. App. at 265–66, 580 S.E.2d 724–25.

Here, the Agreement between DeMaria and LDEI is a mixed contract since it involves both the sale of goods and services.  Indeed, the Agreement contemplated DeMaria paying LDEI $89,830 in exchange for LDEI providing "custom-made medical casework and stainless-steel countertops" for a dental clinic.  *See* N.C. Gen. Stat. § 25-2-105(1) ("'Goods' means all things (including specially manufactured

---

[1] We also conclude the Agreement does not concern fixtures.  *See* 1 Webster's Real Estate Law in North Carolina § 2.02 (2024) ("'[R]eal fixtures' generally consist of things, originally chattels personal, which have been annexed to land, or to things permanently attached to land, by the owner of the chattels or with his assent, and with the intention to make the annexation permanent."); *see also* N.C. Gen. Stat. § 25-9-102(a)(41) (2023) ("'Fixtures' means goods that have become so related to particular real property that an interest in them arises under real property law.").

goods) . . . .").  The Agreement also specified that LDEI would agree "to furnish in accordance with plans and specifications all labor, materials, equipment and services necessary . . . and complete installation" of the Project.  LDEI's designs needed to conform to the "plans and specifications," and LDEI was responsible for its cabinets properly fitting within the dental clinic.  Thus, "the language of the contract" denotes a mixed contract by including the sale of goods, cabinets and countertops, and the provision of services, fitting and installing those cabinets and countertops.  *See, e.g., Princess Cruises*, 143 F.3d at 833 (providing "the language of the contract" is a pertinent factor in "determining the nature of the contract . . . .").

Although the Agreement contemplated LDEI would install the goods once manufactured, the installation of the goods appears to only be "incidentally involved" when reviewing the other factors in *Hensley*, 158 N.C. App. at 265–66, 580 S.E.2d 724–25.  For example, the record shows LDEI is in the business of manufacturing, selling, delivering, and installing cabinets and countertops.  *See, e.g., id.* at 266, 580 S.E.2d at 725.  The record also indicates LDEI's correspondence originated from their president, who oversees all manufacturing.  *Cf. Princess Cruises*, 143 F.3d at 833 (determining the nature of the business points towards services because "although GE is known to manufacture goods, GE's correspondence and Quotations came from GE's Installation and Service Engineering Department").  Further, the conflict between the parties, illustrated by discussions between LDEI's president and DeMaria, concerns a change order requested for the increased price of material costs

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

only—not installation. The "nature" of LDEI's business with DeMaria involves the sale of goods. *See Hensley*, 158 N.C. App. at 266, 580 S.E.2d 725.

The record also demonstrates the intrinsic worth of the goods supplied outweighs the value of their installation. In fact, the breakdown of the Agreement price is contained within the record after the change order for materials was requested. *Cf. Princess Cruises*, 143 F.3d at 833 ("Finally, the last *Coakley* factor— the intrinsic worth of the materials supplied—cannot be determined because neither Princess's Purchase Order nor GE's Final Price Quotation separately itemized the value of the materials."). The breakdown of the Agreement price at the time was $73,547 for "painted steel cabinetry and stainless-steel cabinetry"; $29,794 for "stainless steel worktops and sinks"; $1,671 for "hot and cold water faucets"; and $10,400 for "installation." Although these figures account for the material cost increases, the change order was used solely for "the huge material price increases." Of the original Agreement price of $89,830, only $10,400 accounted for installation costs. The "intrinsic worth" of the goods accounted for the majority of the Agreement price. *Id.* at 266, 580 S.E.2d at 725.

After careful review, we hold the Agreement is a mixed contract, but its predominant purpose is for the sale of goods. *See Thermal Design, Inc. v. M&M Builders, Inc.*, 207 N.C. App. 79, 80, 698 S.E.2d 516, 518 (2010) (applying the UCC in reviewing a summary judgment order dealing with a contract for "a custom-manufactured roofing and insulation system" which was manufactured and installed

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

by the defendant). Accordingly, the UCC applies to our formation analysis. *See* 2 North Carolina Cont. Law § 6-9; *see also Mims v. Mims*, 305 N.C. 41, 61, 286 S.E.2d 779, 792 (1982) (citations omitted) ("Here, . . . we are dealing with a motion for summary judgment at which a forecast of the evidence available for trial has been presented. In this context, particularly, 'the nature of the action is not determined by what either party calls it.'").

## B. Contract Formation under the UCC

LDEI asserts the trial court erred in granting summary judgment since a genuine issue of material fact remains of whether DeMaria and LDEI formed a valid contract. In LDEI's view, "an unreasonable amount of time passed between LDEI's offer . . . and DeMaria's purported acceptance[,]" thereby rendering the Agreement invalid. We disagree.

The rules governing contract formation under the UCC differ from the rules applied under traditional common law. *See Fordham v. Eason*, 351 N.C. 151, 156, 521 S.E.2d 701, 705 (1999). N.C. Gen. Stat. § 25-2-204 provides general rules pertaining to contract formation under the UCC:

> (1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.
>
> (2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.
>
> (3) Even though one or more terms are left open a contract

for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

N.C. Gen. Stat. § 25-2-204. Among these general rules, "[u]nder the Code[,] a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." *Carolina Builders Corp. v. Howard-Veasey Homes, Inc.*, 72 N.C. App. 224, 227, 324 S.E.2d 626, 629 (1985) (citation omitted); *see also* N.C. Gen. Stat. § 25-2-204.

Our Supreme Court's decision in *Fordham v. Eason* is instructive. 351 N.C. at 151, 521 S.E.2d at 701. In that case, the defendant, American Woodland Industries ("AWI"), "entered into [an] agreement with the Easons titled 'Timber Purchase and Sales Agreement.'" *Id.* at 156, 521 S.E.2d at 704. The agreement "allowed AWI to enter and remove trees, tops, or laps from a 115-acre tract of land . . . until 7 February 1999." *Id.* AWI sent "a check for $30,000" to the Easons, who signed the agreement. *Id.* However, the "agreement was not signed by an AWI representative." *Id.* Instead, "the bottom of the agreement listed American Woodland Industries, Inc. and listed the corporation's address." *Id.* at 156, 521 S.E.2d at 705. On appeal, our Supreme Court applied the UCC to determine whether there was a valid contract. *Id.* Notwithstanding AWI's failure to sign the contract, the Court concluded "AWI and the Easons' conduct clearly demonstrates that they intended to enter a contract for the sale of timber." *Id.* at 157, 521 S.E.2d at 705. The Court reasoned "by acting in

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

accordance with the terms in the 'Timber Purchase and Sales Agreement,' AWI created a contract for the sale of timber." *Id.*

Here, DeMaria and LDEI's conduct demonstrates they intended to enter into a contract for the sale and installation of custom cabinets and countertops. The Agreement, offered by DeMaria, provided for the purchase and installation of "custom-made medical casework and stainless-steel countertops" in exchange for $89,830. DeMaria drafted the Agreement, and LDEI signed it. As in *Fordham*, DeMaria failed to sign the Agreement until two years after LDEI had signed it; calling into question the principles of contract formation. Notwithstanding the lack of a signature by DeMaria, LDEI began manufacturing the goods on 12 August 2022, and DeMaria had paid LDEI up to $76,030 as of 29 March 2023. Further, LDEI complied with the Agreement's change order provision by requesting additional funds based on price increases of materials. Compliance with the written Agreement's provisions, and payments in exchange for the goods, shows conduct sufficient to support a valid contract between the parties. *See Fordham*, 351 N.C. at 157, 521 S.E.2d at 705 ("[B]y acting in accordance with the terms in the 'Timber Purchase and Sales Agreement,' AWI created a contract for the sale of timber."); *see also Carolina Builders Corp.*, 72 N.C. App. at 227–28, 324 S.E.2d at 629 ("The delivery and acceptance of materials from 19 June 1981 through 9 November 1981, coupled with invoicing and payment, is conduct by the parties which recognizes the existence of a contract."). LDEI showed its intent to be bound and recognized the existence of the

contract by signing the Agreement, manufacturing the cabinets, and accepting payments. *See Unitrac, S.A. v. S. Funding Corp.*, 75 N.C. App. 142, 146, 330 S.E.2d 44, 46 (1985).

LDEI maintains it was the offeror as opposed to the offeree, relying on the affidavit of its president:

> On September 10, 2020, LDEI offered DeMaria a quote of $89,830 for the cabinets and countertops at issue. This offer was reflected in the proposed Subcontract Agreement between LDEI and DeMaria that I signed on September 10, 2020, and that I provided to DeMaria the same day. DeMaria did not countersign the proposed Subcontract Agreement until February 23, 2023—more than two years later—and only did so in an attempt to lock in the initially quoted offer of $89,830 which had increased significantly in the interim period between when this price was offered and when DeMaria countersigned the proposed Subcontract agreement.

But whether LDEI's president believed the Agreement was its offer or acceptance is immaterial since the parties acted consistent with the terms of the Agreement and formed a valid contract. *See Fordham*, 351 N.C. at 157, 521 S.E.2d at 705; *see also* N.C. Gen. Stat. § 25-2-204. Therefore, concluding the Agreement was LDEI's offer, and not DeMaria's, would still not render the trial court's summary judgment order erroneous on the basis of contract formation. *See DeWitt*, 355 N.C. at 681, 565 S.E.2d at 146 (citations omitted) (emphasis added) ("[A]n issue is material if the facts alleged would constitute a legal defense, or *would affect the result of the action*, or if its resolution would prevent the party against whom it is resolved from prevailing in the

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

action[.]").

Finally, the fact that DeMaria's countersignature was delayed had no impact on LDEI signing the Agreement, manufacturing the goods, discussing change orders as modifications to the Agreement, and receiving payments from DeMaria. *See Fordham*, 351 N.C. at 156–57, 521 S.E.2d at 705 (citing N.C. Gen. Stat. § 25-2-204(1)) ("'A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.'"). LDEI eventually finding out about the delayed countersignature does not factually support or explain any lack of understanding to the Agreement. In fact, the dispute over the Contract only arose through LDEI's request to increase the cost of materials to be paid by DeMaria via the contractually provided change order. LDEI's compensation was previously and explicitly stated in the Agreement. In accordance with the Agreement, LDEI requested a change order to the price to "cover the huge material price increases only" and not for "overhead or profit." These discussions show the price of compensation being modified in accordance with the Agreement, as opposed to ongoing negotiations of a final price yet determined.

In view of the foregoing, we hold DeMaria and LDEI entered into a valid contract to manufacture, deliver, and install custom cabinets and countertops. Since DeMaria and LDEI formed a valid contract, we consider whether LDEI breached that Contract's terms. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C.

DeMaria Bldg. Co. Inc. v. Lab. Design, Equip. & Installations LLC

*Opinion of the Court*

App. 19, 26, 530 S.E.2d 838, 843 (2000). The record shows LDEI breached the underlying Agreement by failing to deliver and install the cabinets and countertops within the Project's schedule; LDEI did not deny failing to deliver the cabinets on time as directed by DeMaria through the Contract's time is of the essence clause. *Cf. Harris v. Stewart*, 193 N.C. App. 142, 146, 666 S.E.2d 804, 807 (2008) (absent a time is of the essence clause, "the dates stated in an offer to purchase and contract agreement serve only as guidelines, and such dates are not binding on the parties."). The record shows LDEI breached the Contract. Viewing all the evidence in the light most favorable to LDEI, our *de novo* review shows the trial court did not err by granting summary judgment in favor of DeMaria. *See Thorpe*, 223 N.C. App. at 205, 733 S.E.2d at 188; *see also In re Will of Jones*, 362 N.C. at 573, 669 S.E.2d at 576.

## IV.    Conclusion

We hold no genuine issue of material fact exists, and DeMaria is entitled to judgment in its favor as a matter of law.

AFFIRMED.

Judges TYSON and FREEMAN concur.

Report per Rule 30(e).