Spring v. Lawson, 2026 NCBC 41.

STATE OF NORTH CAROLINA

WAKE COUNTY

NICHOLAS SPRING,

        Plaintiff/
        Counterclaim-
        Defendant,

v.

CHRISTOPHER SHAWN LAWSON
and MONSTER DEMOLITION, LLC,

        Defendants/
        Counterclaim-
        Plaintiffs.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV007611-910

**ORDER AND OPINION ON
PLAINTIFF'S MOTION TO DISMISS
DEFENDANTS' COUNTERCLAIMS**

1. This matter is before the Court on the Rule 12(b)(6) motion to dismiss filed by plaintiff and counterclaim-defendant Nicholas Spring, seeking dismissal of all counterclaims asserted by defendants and counterclaim-plaintiffs Christopher Shawn Lawson and Monster Demolition, LLC. (ECF No. 17).

2. Defendant failed to serve a response in opposition to the motion, and the time to do so has expired. As a result, "the motion will be considered and decided as an uncontested motion." BCR 7.6; *cf. Thompson v. Bass*, 261 N.C. App. 285, 292 (2018) (deeming issue abandoned on appeal where appellant "failed to submit any meaningful argument" in support of his positions).

3. In the exercise of judicial discretion, the Court dispenses with oral argument pursuant to Rule 7.4 of the Business Court Rules.

4. Having considered the counterclaims and the written arguments of counsel, the Court **GRANTS in part** and **DENIES in part** Spring's motion to dismiss the counterclaims.

*Vann Attorneys, PLLC, by Anna A. Rodriguez and Ian S. Richardson, for Plaintiff/Counterclaim-Defendant Nicholas Spring.*

*Law Office of John M. Kirby, PLLC by John M. Kirby, for Defendants/Counterclaim-Plaintiffs Christopher Shawn Lawson and Monster Demolition, LLC.*

Houston, Judge.

## I.    BACKGROUND

5.     The Court does not make findings of fact in ruling on a Rule 12(b)(6) motion to dismiss. Instead, for background, the Court summarizes the factual allegations of the counterclaims that are most relevant to the Court's decision and accepts the well-pleaded allegations as true for purposes of this Order and Opinion.

6.     Plaintiff and counterclaim-defendant Nicholas Spring is a citizen and resident of Wake County, North Carolina. (ECF No. 11 at 7, ¶ 1).

7.     Defendant and counterclaim-plaintiff Monster Demolition, LLC is a North Carolina entity[1] with its principal offices in Johnston County, North Carolina. (ECF No. 11 at 7, ¶ 3).

---

[1] Defendants conflictingly allege that Monster Demolition "is a corporation," (ECF No. 11 at 7, ¶ 3), while also referring to the entity as "Monster Demolition, **LLC**," (ECF No. 11 at 7, ¶ 7), and referring to the parties as "members" throughout the counterclaim pleadings, (*e.g.*, ECF No. 11 at 7−11, ¶¶ 7, 22, 52). In its discretion, the Court therefore takes judicial notice that, as reflected in the caption, Monster Demolition, LLC, is a limited liability company, as reflected by the records of the North Carolina Secretary of State. *See* N.C. R. Evid. 201(b)–(c) (judicial notice); *Banc of Am. Merch. Servs., LLC., v. Arby's Rest. Grp., Inc.*, 2021 NCBC LEXIS 60, at *5, n. 3 (N.C. Super. Ct. June 30, 2021); *see Monster Demolition Limited Liability Company Articles of Organization,* SOSID: 2061373, N.C. Sect'y St. (6 Oct. 2020), available at https://www.sosnc.gov/online_services/search/profile_filings/16501814.

8. Defendant and counterclaim-plaintiff Christopher Shawn Lawson is a citizen and resident of Johnston County, North Carolina, and is a member of Monster. (ECF No. 11 at 7, ¶¶ 2, 7).

9. At an unspecified time around or after "late 2021," long-time acquaintances Lawson and Spring orally agreed to "engage in a joint enterprise as members" of Monster, with Lawson contributing his "vast knowledge in the field [of demolition] as well as the customer base within the field." (ECF No. 11 at 7, ¶¶ 6–8). Lawson also agreed to "essentially train" Spring in operating a demolition company. (ECF No. 11 at 7, ¶ 9).

10. No written operating agreement or other such agreement was ever finalized or executed for Monster, with Spring and Lawson instead relying exclusively on oral arrangements. (ECF No. 11 at 8, ¶ 15).

11. Spring and Lawson orally agreed to "contribute equipment and financial resources to the operation of Monster." Based on that agreement, Lawson "sold and liquidated many of his personal assets to acquire capital," while Spring "contributed various pieces of equipment and vehicles to Monster Demolition," though those items "were largely encumbered with debt." (ECF No. 11 at 8–9, ¶¶ 10–12, 28). The vehicles contributed by Spring were reflected as equity contributions in Monster. (ECF No. 11 at 9, ¶ 28).

12. The parties' contributions were "approximately equal" in value, though Lawson contributed "approximately $9,000 more" to the business. Spring

and Lawson agreed that their "respective capital contributions would determine their ownership" of Monster. (ECF No. 11 at 8, ¶¶ 13–14).

13. During the course of Monster's operations, Monster acquired several pieces of equipment, including "a Kubota 80 excavator, Texas Pride roll off dumpster trailer, five dumpsters, and a Texas Pride equipment trailer" (collectively, the "**Equipment**"), with Monster making payments of between $2,500–$4,300 per month on that equipment. (ECF No. 11 at 9, ¶¶ 29–30).

14. Though Monster operated successfully with Lawson's involvement, Spring "failed to keep proper books and accounting" for Monster and used Monster's assets for his own benefit and for that of his other company, Imagination Fabrication, despite Lawson's requests that he stop doing so. (ECF No. 11 at 8, ¶¶ 16, 19–20).

15. Spring also limited Lawson's access to Monster's financial accounts. (ECF No. 11 at 8, ¶ 21).

16. As a result, the parties agreed that Spring would withdraw from and cease his involvement in Monster aside from remaining a "nominal member" with "no ownership interest" in the company and with Lawson becoming the "sole owner" of the company. (ECF No. 11 at 8, ¶ 22).

17. To "rectify some of the improper expenses he had made with company assets," Spring deposited $40,000 into Monster's bank account but immediately withdrew those funds after disassociating from Monster's operations. (ECF No. 11 at 9, ¶ 25).

18.    Spring also began taking Monster's "assets and accounts and equipment and vehicles" and informed Lawson that he intended to ruin the business. (ECF No. 11 at 9, ¶¶ 26–27).

19.    Among other things, Spring took the Equipment with the assistance of the individual who had sold the equipment to Monster initially. (ECF No. 11 at 9, ¶¶ 31–32). Spring also took $17,500 from Monster's checking account and was subsequently indicted as a result. (ECF No. 11 at 9–10, ¶¶ 33–34).

20.    Spring also purportedly "stole the accounts of Monster," including "email accounts and [a] Go Daddy account and Gmail accounts." (ECF No. 11 at 10, ¶ 35).

21.    Moreover, Spring "withdrew his general contractor and utilities license from Monster Demolition" in a manner "contrary to Plaintiff's agreement with Monster Demolition" and despite Monster having provided "more than $10,000" to enable Spring to obtain a contractor's license. (ECF No. 11 at 10, ¶¶ 36–37).

22.    Defendants filed their answer and counterclaims against Spring on 15 October 2025, asserting causes of action for (i) conversion, (ii) trespass to chattels, (iii) breach of fiduciary duty, (iv) unfair and deceptive trade practices, and (v) misappropriation of trade secrets.

23.    In turn, Spring filed a Rule 12(b)(6) motion to dismiss the counterclaims. (ECF No. 18). Defendants did not file a brief in opposition or

otherwise respond to the motion, and their deadline to do so has passed. Thus, the uncontested motion is ripe for resolution.

## II.    ANALYSIS

24.    When considering a Rule 12(b)(6) motion, the Court must determine "whether the allegations of the [counterclaim], if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation omitted); *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus.*, 336 N.C. 438, 442 (1994) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692 (1991)).

25.    Thus, the Court treats the well-pleaded factual allegations as true and views them "in the light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation omitted); *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017).

26.    The Court addresses each of Defendants' causes of action in turn.

## A. <u>Conversion</u>

27.    For their conversion cause of action, Defendants allege that Spring converted "the property and equipment and vehicles and funds of Monster Demolition to his own benefit" and that "Monster Demolition was the proper owner of and had possession of said equipment, vehicles, funds, and other properties . . . at the time [Spring] converted these assets to his personal use." (ECF No. 11 at 10, ¶¶ 40–41).

28.     Spring's sole argument in support of his motion to dismiss the conversion cause of action is that Defendants' counterclaim constitutes improper group pleading because it is asserted on behalf of both Defendants, even though there is no allegation that Lawson had an ownership interest in the property at issue. (ECF No. 18 at 6–7).

29.     As to Lawson, Spring is correct. Despite asserting all causes of action on behalf of both Defendants, Defendants do not allege that any of the items or funds at issue belonged to Lawson. (ECF No. 11 at 10, ¶¶ 39–42).

30.     As to Monster, however, the counterclaims are sufficiently clear.

31.     "[C]onversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86 (2008) (internal quotations omitted). A party "must prove two essential elements to establish a conversion claim under North Carolina law: (1) ownership in the [claimant], and (2) a wrongful possession or conversion by the" opposing party. *Air Cleaning Equip., Inc. v. Clemens*, 2016 NCBC LEXIS 199, at *28–29 (N.C. Super. Ct. Apr. 29, 2016) (internal citations omitted).

32.     To the extent that the conversion cause of action is asserted on behalf of Lawson, Defendants affirmatively allege that "the property and equipment and vehicles and funds" at issue were those "of Monster Demolition"—not of Lawson. (ECF No. 11 at 10, ¶ 40). Defendants do not allege facts suggesting "ownership in

[Lawson]" of the property, equipment, vehicles, or funds. *Air Cleaning Equip.*, 2016 NCBC LEXIS 199, at *28−29.

33. Defendants cannot use improper group pleading to create a cause of action on behalf of Lawson when it is defeated by the express allegations of the counterclaims. *PCS Phosphate Co. & PCS Admin. USA, Inc v. Jacobs Eng'g Grp., Inc.*, 2026 NCBC LEXIS 60, at *17 (N.C. Super. Ct. Mar. 11, 2026) (addressing impermissible group pleading where two plaintiffs were vaguely referred to collectively); *Britcher v. Assur. Grp., LLC*, 2025 NCBC LEXIS 150, at *10−12 (N.C. Super. Ct. Nov. 4, 2025) (same); *Baker v. Hobart Fin. Grp.*, 2023 NCBC LEXIS 45, at *4 (N.C. Super. Ct. Mar. 22, 2023) (same).

34. Thus, the conversion cause of action fails as to Lawson, and the Court **GRANTS** the motion as to Lawson's cause of action for conversion and dismisses it with prejudice.[2] *Preiss v. Wine & Design Franchise, LLC*, 2018 NCBC LEXIS 99, at *26 (N.C. Super. Ct. Sept. 24, 2018) (dismissing a claim of conversion against two of four defendants when the facts as alleged were not "specifically against" those defendants).

35. Inasmuch as the conversion cause of action is asserted on behalf of Monster, Defendants have alleged that Monster is the owner of the Equipment and funds at issue and that Spring wrongfully took possession of the Equipment

---

[2] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court . . . ." *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013) (citation omitted). With respect to each of the causes of action addressed by this Order and Opinion, the Court has carefully considered whether dismissal with or without prejudice is appropriate.

and funds without authorization after he withdrew from Monster's operations. (ECF No. 11 at 9–10, ¶¶ 24–25, 28–32, 40–41).

36. Defendants specifically allege that "the property and equipment and vehicles and funds" are those "of Monster Demolition" and that "Monster Demolition was the proper owner of and had possession of said equipment, vehicles, funds, and other properties." (ECF No. 11 at 10, ¶¶ 40−41).

37. Accordingly, considering the limited scope of Plaintiff's motion, the Court **DENIES** the motion to dismiss as to Monster's conversion cause of action.

## B. Trespass to Chattels[3]

38. Defendants similarly plead their trespass to chattels cause of action on behalf of both Defendants, asserting that Spring "committed a trespass upon

---

[3] The Court observes that, throughout the counterclaims, it appears that Defendants' counsel dictated the pleading via a talk-to-text function and failed to proofread the document before filing it. The document is replete with homophones, typographical errors, and nonsensical statements. Among other things, the document refers at various points to "trespass upon shadows," (ECF No. 11 at 9, ¶ 46); "[s]et equipment" (apparently referring instead to "said" (i.e., aforementioned) equipment), (ECF No. 11 at 9, ¶ 32); "comparing Monster Demolition's ability" rather than "*impairing* Monster Demolition's ability," (ECF No. 11 at 10, ¶ 36); Lawson's alleged "reach" of fiduciary duties rather than "breach," (ECF No. 11 at 11, ¶ 49); a contention that "[t]hey planted breached further fiduciary duties," (ECF No. 11 at 11, ¶ 50); "set accounts" rather than "said accounts," (ECF No. 11 at 11, ¶ 52); conduct "in and affecting commerce with any state of North Carolina" rather than "*within* the state of North Carolina," (ECF No. 11 at 12, ¶ 55); and the conflicting assertion that Spring's conduct was "appropriate and contrary to public policy and fraudulent and willful," (ECF No. 11 at 12, ¶ 56). As the Court has repeatedly observed in other cases, minor typographical errors happen, even to the Court. However, repeated or obvious errors—such as "trespass upon shadows," for example— reflect an inexcusable lack of care in preparing filings. N.C. R. Prof. Cond. 1.3, cmt. 8; *see Taggart v. Deutsche Bank Nat'l Trust Co.*, 2021 U.S. Dist. LEXIS 104102, at *39 (E.D. Pa. June 3, 2021) (concluding that "[t]he volume and severity of [counsel's] errors in the [pleading] demonstrate[d] a complete lack of diligence and a failure to proofread," which ultimately led to sanctions).

*the property of Monster Demolition* as herein described," including the vehicles and other Equipment described above. (ECF No. 11 at 11, ¶ 44).

39.     As above, Spring's sole argument in support of dismissal is that Defendants' counterclaim involves improper group pleading since it is asserted on behalf of both Defendants. (ECF No. 18 at 6–7).

40.     "To satisfy a claim for trespass to chattel, a [party] must demonstrate that [he] had either actual or constructive possession of the personalty or goods in question at the time of the trespass, and that there was an unauthorized, unlawful interference or dispossession of the property." *Kirschbaum v. McLaurin Parking Co.*, 188 N.C. App. 782, 786–87 (2008) (quoting *Fordham v. Eason*, 351 N.C. 151, 155 (1999)).

41.     Defendants affirmatively plead that the items above were exclusively Monster's and that it was "entitled to sole possession" of them. (ECF No. 11 at 11, ¶ 46). Defendants fail to plead any facts suggesting the items were in any way in Lawson's possession.

42.     Thus, the Court **GRANTS** the motion as to Lawson's cause of action for trespass to chattels and dismisses it with prejudice. *Fordham,* 351 N.C. at 155 (citing *Carson v. Noblet*, 4 N.C. 136 (1814)).

43.     As to Monster, however, Defendants allege possession of the property at issue, entitlement to sole possession, and Spring's unauthorized, unlawful inference with (and dispossession of) the property. (ECF No. 11 at 10–11, ¶¶ 29,

43–46); *see Yurk v. Terra Ctr., LLC,* 2026 N.C. App. LEXIS 248, at *11 (Mar. 18, 2026) (affirming liability for trespass to chattels).

44.    Considering the limited scope of the motion, the Court therefore **DENIES** Spring's motion to dismiss as to Monster's cause of action for trespass to chattels.

### C. <u>Breach of Fiduciary Duty</u>

45.    Next, Defendants assert a cause of action for breach of fiduciary duty, contending that Spring "had a fiduciary obligation to the Defendants to act in the best interest of the company and to not interfere with the interest of the company and to not divert business opportunities from" Monster. (ECF No. 11 at 11, ¶ 48).

46.    Spring argues that, as a mere member of Monster, he owed no fiduciary duty to either Defendant. (ECF No. 18 at 7−9).

47.    "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651 (2001) (internal citations omitted).

48.    As a general rule, "[m]embers of a North Carolina limited liability company, like the parties to this lawsuit, do not owe fiduciary duties to each other that can be breached." *Musselwhite v. Cheshire*, 266 N.C. App. 166, 179 (2019) (citing *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473 (2009)).

49.    Further, "[a] member-manager of a limited liability company owes no fiduciary duty to the other members; rather, the fiduciary duty is owed to the

company." *Bethesda Rd. Partners, LLC v. Strachan*, 267 N.C. App. 1, 7 (2019) (citing *Kaplan*, 196 N.C. App. at 474)

50. Under North Carolina, by statutory default, "[a]ll members by virtue of their status as members are managers of the LLC," with the attendant duties of that role. N.C. Gen. Stat. § 57D-3-20(d). However, as was the case here, an LLC may be governed by an oral or implied operating agreement, or the statutory defaults for an operating agreement may be modified or supplemented by the agreement of the members. *See* N.C. Gen. Stat. § 57D-1-03(23). Indeed, "[b]ecause an LLC is a creature of contract, members have the freedom to allocate rights and responsibilities as they wish." *Wright v. Lorusso Ventures, LLC*, 2023 NCBC LEXIS 114, at *14 (N.C. Super. Ct. Sept. 19, 2023); *see also Estevez v. C&S Com., LLC*, 2025 NCBC LEXIS 166, at *21 ("Quite simply, public policy in North Carolina favors freedom of contract, including the ability for parties to negotiate the scope of a company's operating agreement." (quoting *Strategic Mgmt. Decisions v. Sales Performance Int'l*, 2017 NCBC LEXIS 69 (N.C. Super. Ct. Aug. 7, 2017)); *Emrich Enters. v. Hornwood, Inc.*, 2022 NCBC LEXIS 19, at *42 (N.C. Super. Ct. Feb. 15, 2022) ("The North Carolina Limited Liability Company Act does not create fiduciary duties among members. . . . As a general rule, members of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company." (internal quotations omitted)).

51.     Defendants do not allege that Spring was a manager of Monster. Even if such a role might otherwise be the case by statutory default, however, Defendants expressly plead that "the parties" agreed that Spring was only a "nominal member" of Monster with "no ownership interest" in the company. (ECF No. 11 at 8, ¶ 22).

52.     Spring was also "dissociated" from the company's operations. (ECF No. 11 at 8, ¶ 25). Indeed, the only events that Defendants contend constituted breaches of fiduciary duty all occurred after Defendants expressly assert that Spring was relegated to status as a non-owner, "nominal member" of Monster: (i) conversion of Monster's property, (ii) "utilizing [unspecified] trade secrets and trade knowledge acquired from the Defendants," and (iii) "severing" Defendants' access to Monster's "website, Go Daddy account, Gmail account, other email accounts, QuickBooks accounts, banking and financial accounts" and other similar sources of information. (ECF No. 11 at 11, ¶¶ 22, 47–53).[4]

53.     There are no factual allegations that otherwise suggest that the relationship between the parties was "one in which there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence[.]" *Kaplan*, 196 N.C. App. at 479.

---

[4] Defendants do not allege that any of the actions allegedly occurring before that time, such as Spring's poor bookkeeping or commingling of funds, were breaches of a purported fiduciary duty, presumably because Defendants expressly allege that Spring's and Lawson's ownership interests in Monster were determined by their "respective capital contributions" in the company and that Lawson contributed "approximately $9,000 more" and thus would be the majority owner. (ECF No. 11 at 8, ¶¶ 13−14).

54. Considering the specific conduct identified by Defendants, the factual circumstances pleaded do not demonstrate the existence of a fiduciary duty or state a claim for breach of fiduciary duty, either at the member-to-member level between Spring and Lawson or the individual-to-company level between Spring and Monster.

55. Therefore, the Court **GRANTS** the motion to dismiss the breach of fiduciary duty cause of action and dismisses that cause of action with prejudice.

### D. Misappropriation of Trade Secrets

56. Defendants further allege that Spring misappropriated "trade secrets" under the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152 *et seq.*, in that "Lawson agreed to provide his expertise to the Plaintiff and his business connections for the use and benefit of Monster Demolition, under circumstances which render said information a trade secret." (ECF No. 11 at 12, ¶¶ 61–62).

57. Spring correctly argues that Defendants fail to plead the purported trade secrets with the requisite particularity and that the cause of action fails as a matter of law. (ECF No. 18 at 12).

58. To state a claim for misappropriation of trade secrets, a party generally must allege that the opposing party (i) "[k]nows or should have known of the trade secret," and (ii) "[h]as had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or

implied consent or authority of the owner." *Krawiec v. Manly*, 370 N.C. 602, 608–09 (2018) (quoting N.C. Gen. Stat. § 66-155 (internal quotation marks omitted)).

59. A trade secret is defined by statute as

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3).

60. In deciding whether information constitutes a trade secret, courts consider

> (1) [t]he extent to which [the] information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard secrecy of the information; ([4]) the value of information to [the] business and its competitors; ([5]) the amount of effort or money expended in developing the information; and ([6]) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 270, 278 (2019) (quoting *Wilmington Star-News, Inc. v. New Hanover Reg'l Med. Ctr., Inc.*, 125 N.C. App. 174, 180–81 (1997) (alterations in original)).

61. Generally, a party must "identify a trade secret with sufficient particularity so as to enable [the opposing party] to delineate that which he is accused

of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec,* 370 N.C. at 609–10 (quoting *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 326 (2008)).

62. Further, the counterclaim must "set forth with sufficient specificity the acts by which the alleged misappropriation occurred." *Wells Fargo,* 372 N.C. at 279 (internal citation omitted).

63. A counterclaim "that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is insufficient to state a claim for misappropriation of trade secrets." *Krawiec,* 370 N.C. at 610 (internal quotations and quotation marks omitted).

64. "[T]here is no presumption that a thing is a secret," such that the claimant must adequately plead facts to demonstrate efforts to maintain the confidentiality of a purported trade secret. *Krawiec*, 370 N.C. at 611 (citation omitted) (determining that a trade secret had not been adequately pleaded "because plaintiffs failed to allege that the lists contained any information that would not be readily accessible to defendants").

65. "Without any allegations of reasonable efforts to maintain secrecy, the mere assertion that the [alleged trade secrets] were kept confidential is not enough to withstand a 12(b)(6) motion to dismiss." *Thortex, Inc. v. Std. Dyes, Inc.*, 2006 N.C. App. LEXIS 1171, at *10 (June 6, 2006) (unpublished); *see also Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 478 (2000) (determining that the

secrecy requirement was not met where there was no showing that "the company took any special precautions to ensure the confidentiality of its customer information").

66. Defendants' allegations are vague, conclusory, fail to meet this pleading standard, and fail to state a claim for misappropriation of trade secrets.

67. In short, Defendants argue that Lawson shared vaguely described "expertise" and "business connections" with Spring and that Spring misappropriated that information. (ECF No. 11 at 12, ¶¶ 61–62).

68. "Such perfunctory allegations are insufficient to state a claim." *Treece v. Advisors Excel, LLC*, 2026 NCBC LEXIS 71, at *9–10 (N.C. Super. Ct. Mar. 19, 2026) (citing *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *68–69 (N.C. Super. Ct. Nov. 3, 2011) and *Aecom Tech Corp. v. Keating*, 2012 NCBC LEXIS 9, at *8 (N.C. Super. Ct. Feb. 6, 2012)).

69. Defendants fail to plead any non-conclusory, factual allegations suggesting that the expertise or business connections (i) derived any "independent actual or potential commercial value from not being generally known or readily ascertainable," or (ii) were "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C. Gen. Stat. § 66-152(3); *Treece*, 2026 NCBC LEXIS 71, at *9–10 (granting motion to dismiss).

70. Further, though they describe *other* things that Spring allegedly took, such as the Equipment, Defendants have not alleged specific acts by which Spring allegedly misappropriated the "expertise" or "business connections" at issue. *M.D. Claims Grp., LLC v. Bagley*, 2025 NCBC LEXIS 5, at *20 (N.C. Super. Ct. Jan. 22,

2025); *see also Washburn*, 190 N.C. App. at 327 (holding that allegations that the defendant "acquired knowledge of . . . [plaintiff's] confidential client information" and that "[defendant] believes [plaintiff] used its trade secrets . . . without [plaintiff's permission]" were insufficient to adequately allege trade secret misappropriation).

71. To the extent that Defendants also purport to assert this cause of action on behalf of Monster, rather than only Lawson, Defendants also fail to plead facts showing that the "expertise" or "business connections" belonged to Monster. Instead, they specifically allege that the expertise and business connections were Lawson's. (ECF No. 11 at 12, ¶ 61 ("The Defendant Lawson agreed to provide *his* expertise and *his* business connections . . .")).

72. Ultimately, Defendants' conclusory allegations fail to meet the pleading requirements to state a claim for misappropriation of trade secrets, and the Court therefore **GRANTS** Defendant's motion and dismisses with prejudice this cause of action.

### E. Chapter 75 Cause of Action

73. Finally, the Court addresses Defendants' cause of action under N.C. Gen. Stat. § 75–1.1 *et seq.*

74. For that cause of action, Defendants assert that Spring

> committed several unfair and deceptive acts against the Defendants as herein alleged, including but not limited to converting and stealing funds from Monster Demolition, converting and stealing vehicles and equipment from Monster Demolition, acquiring control and domination of accounts belonging to Monster Demolition, stealing and diverting clients from Monster Demolition to the Plaintiff's competing business, diverting funds and equipment from

the Defendant Monster Demolition for use in the Plaintiff's other business ventures, denying the Defendants' access to financial and bank and QuickBooks and other accounts to which the Defendants needed access.

(ECF No. 11, ¶ 56). Defendants conclusorily assert that the "actions and agreements of the parties are in and affecting commerce with any [sic] state of North Carolina," though they do not allege that Spring's conduct specifically was in or affecting commerce in the state. (*See generally* ECF No. 11).

75.　In support of his motion to dismiss, Spring argues that the cause of action fails because the conduct at issue was not in or affecting commerce in North Carolina. (ECF No. 18 at 9−10).

76.　To state a claim for relief under Chapter 75 of the North Carolina General Statutes for alleged unfair or deceptive conduct, a party "must show: (1) [the opposing party] committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that [claimant] was injured thereby." *McKinnon v. CV Indus.*, 213 N.C. App. 328, 340 (2011) (citations omitted).

77.　Misappropriation of trade secrets generally constitutes an unfair act or practice under Chapter 75. *See Medical Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 660 (2009). Where such a cause of action is dismissed for failure to state a claim, however, the Chapter 75 cause of action premised on it is also appropriately dismissed. *Treece*, 2026 NCBC LEXIS 71, at *11; *Charah, LLC v. Sequoia Servs., LLC*, 2020 NCBC LEXIS 52, at *19 (N.C. Super. Ct. Apr. 17, 2020) (collecting cases) (citations omitted); *see also, e.g., Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 374 (2001); *Amerigas Propane, L.P. v. Coffey*, 2015

NCBC LEXIS 98, at *40 (N.C. Super. Ct. Oct. 15, 2015); *Bite Busters, LLC v. Burris*, 2021 NCBC LEXIS 26, at *26−28 (N.C. Super. Ct. Mar. 25, 2021); *Prometheus Grp. Enters., LLC v. Gibson*, 2023 NCBC LEXIS 42, at *37−38 (N.C. Super. Ct. Mar. 21, 2023); *Evergreen Builder Sols., LLC v. Taylor*, 2025 NCBC LEXIS 174, at *28−29 (N.C. Super. Ct. Dec. 29, 2025).

78. Thus, though Defendants do not clearly reference the purported misappropriation as a basis for their cause of action, it would not provide a viable basis to do so even if they did.

79. Further, to the extent that Defendants assert that Spring "committed several unfair and deceptive acts against the Defendants," (ECF No. 11 at 12, ¶ 56), Defendants fail to plead facts suggesting any unfair or deceptive conduct by Spring against Lawson. Instead, each of the allegedly wrongful acts referenced is specific to Monster. (*See, e.g.* ECF No. 11 at 12, ¶ 56 (alleging conversion "from Monster Demolition," "control and domination of accounts belonging to Monster Demolition," "stealing and diverting clients from Monster Demolition," and "diverting funds and equipment from the Defendant Monster Demolition," and denying Defendants access to Monster's "financial and bank and QuickBooks and other accounts")).

80. Thus, the Court **GRANTS** the motion and dismisses with prejudice this cause of action to the extent asserted by Lawson.

81. As to Monster's cause of action under Chapter 75, while tenuous at best, the Court cannot conclude "beyond doubt" that Monster "could prove no set

of facts in support of [its] claim which would entitle [it] to relief." *Meyer v. Walls*, 347 N.C. 97, 111–12 (1997).

82. To adequately allege that conduct was in or affecting commerce, a party generally must plead facts alleging that the opposing party's act was related to its "business activities," or its "regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized.'" *White v. Thompson*, 364 N.C. 47, 52 (2010) (internal quotations omitted). Thus, dismissal may be appropriate where a "dispute does not concern the regular interactions of separate market participants." *Vanguard Pai Lung, LLC v. Moody*, 2023 NCBC LEXIS 84, at *18–19 (N.C. Super. Ct. June 27, 2023).

83. Though they do so in vague and imprecise terms, Defendants allege that Spring (i) formed a competing, third-party business, apparently named Imagination Fabrication,[5] (ii) took the Equipment and funds, and diverted clients, from Monster to benefit Spring, Imagination Fabrication, and the individual who initially sold the Equipment to Monster, and (iii) knowingly did so with the stated intent of harming Monster's business and furthering that external, competing business. (ECF No. 11 at 8–12, ¶¶ 19, 26, 38, 40, 56); *Eley v. Mid/E. Acceptance Corp. of N.C.*, 171 N.C. App. 368, 375 (2005) (affirming Chapter 75 judgment).

---

[5] Though Defendants refer to Imagination Fabrication as "Plaintiff's other business," (ECF No. 11 at 8, ¶ 9), they also vaguely reference "a competing business" with no further details, (ECF No. 11 at 10, ¶ 38).

84. Accordingly, though it faces an uphill climb, it is possible that Monster will be able to prove some set of facts supporting its cause of action for alleged violations of Chapter 75, so the Court **DENIES** the motion to dismiss that cause of action against Monster. *See Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 83 (2008) ("Although it is true that acts of conversion may constitute unfair and deceptive trade practices, this determination must be made based upon the specific findings of the jury, along with any stipulations of the parties." (internal citation omitted)).

### III.   CONCLUSION

85. Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** Spring's motion to dismiss Defendants' counterclaims as set forth above.

86. The Court **DISMISSES WITH PREJUDICE** all of defendant Lawson's counterclaims asserted in this action.

87. The Court **DISMISSES WITH PREJUDICE** defendant Monster's breach of fiduciary duty and misappropriation of trade secrets causes of action, and the Court otherwise **DENIES** the motion to dismiss as to defendant Monster's causes of action.

**SO ORDERED**, this 27th day of April 2026.

/s/ Matthew T. Houston
Matthew T. Houston
Special Superior Court Judge
   for Complex Business Cases